UNITED STATES of America,
Plaintiff–Appellee,

v.

Arturo Jesus ATEHORTUA,
Defendant–Appellant.

No. 88–1265.

United States Court of Appeals,
Seventh Circuit.

Argued April 25, 1989.
Decided May 22, 1989.

Colette Holt, Schiff Hardin & Waite, Chicago, Ill., for defendant-appellant.

Kevin E. Milner, Asst. U.S. Atty., Hammond, Ind., for plaintiff-appellee.

Before WOOD, Jr., CUDAHY and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

How much cocaine is in a kilogram? The answer "1,000 grams" is almost certainly wrong, because no sample of "white powdery substance" (the jargon of police reports) is 100% pure. And a dealer's offer to supply a customer with one kilogram means "one kilo, more or less, of a substance containing cocaine more or less pure". A judge imposing sentence might think that the "more or less" is more or less irrelevant: the gravity of the offense does not depend on whether the weight turns out to be 980 grams or 1,020 grams. How much cocaine is in a kilogram matters, though, for the Parole Commission's release guidelines, which treat selling over 1,000 grams as a more serious offense (with a correspondingly longer period before release). 28 C.F.R. § 2.20 Items 921(d) and (f). Quantities matter under the Sentencing Guidelines, too. See Guideline 2D1.1 and its elaborate Drug Quantity Tables.

Arturo Jesus Atehortua, who in the late 1960s was a police inspector in Medellin, Colombia, stands convicted of selling a kilogram of cocaine in November 1986 to an undercover agent in Indiana. The maximum term under the version of 21 U.S.C. § 841 then in force was 15 years' imprisonment.* Atehortua pleaded guilty and received a sentence of eight years' imprisonment, to be followed by three years' special parole. He does not challenge the conviction but protests the sentence, believing that the district judge labored under a misapprehension about how the Parole Commission would view the offense.

Ronald Bartnicki, the probation officer who prepared the presentence report, estimated that the quantities involved would lead the Commission to give Atehortua an "offense severity rating" of six, which when coupled with Atehortua's personal history would lead the Commission to release Atehortua on parole after 40 to 52 months' custody. A month after sentencing, Bartnicki changed his mind and wrote a letter to the Commission saying that the severity rating should be five, implying release between 24 and 36 months. Atehortua soon returned to the district court under Fed.R.Crim.P. 35, seeking a lower sentence so that he could take advantage of this new parole prognosis. One-third of eight years is 32 months, and so long as the eight-year sentence stood, the Commission would have to hold Atehortua at least that long. 18 U.S.C. § 4205(a) (a repealed statute still applicable to offenses before November 1987). Judge Moody assumed that Bartnicki got it right the second time but declined to reduce Atehortua's sentence, giving this explanation:

> Due process requires that defendants be sentenced on the basis of accurate information.... In reviewing the presentence report, the court finds that the magnitude of the offense, based on the quantity and purity of the illicit substance involved, fully supports the sentence imposed without any reliance on the "offense severity" rating in the presentence report. In any case, objections to the accuracy of information in a presentence report may not be raised in a Rule 35 motion when a defendant does not object to the report, or to any inade-

---

* Or so the parties assume. Congress amended § 841 effective October 27, 1986, in part, and November 1, 1987, for the remainder. The new sentence range under § 841(b)(1)(B) for selling between 0.5 and 5.0 kilograms is 5 to 40 years without possibility of parole. The parties assume that this was not in force during November 1986. We need not decide whether this is correct.

quacy of time to consider it, at the sentencing hearing.... For these reasons, defendant's Rule 35 motion, to the extent that it depends on the inaccuracy in the presentence report, is DENIED.

Finally, that portion of defendant's motion asserting that his sentence is too harsh is a true Rule 35(b) motion which is, in essence, an appeal for leniency.... The court has reviewed the grounds asserted in defendant's motion as justification for reducing his sentence, and does not find them persuasive. Defendant has provided no new information of which the court was not previously aware when it determined his original sentence. It is the court's opinion now, as it was then, that his sentence was appropriate in light of the serious nature of the crime to which he pled guilty.

Atehortua asks us to order the district court to reduce his sentence. A Rule 35(b) motion, as a plea for lenience, is committed to the district court's discretion. Eight years for selling a kilo of cocaine does not approach the limits of discretion for pre-Guideline sentences. Selling between 500 and 2,000 grams of cocaine is a level 26 offense under the Guidelines, implying a sentence of 63 to 78 months (without parole) for an offender with the best personal characteristics. Atehortua will serve less than that (assuming he behaves himself) no matter which severity rating the Parole Commission assigns to his sale.

■ The district court lacks discretion, however, if the sentence is "in violation of law", see Rule 35(a), and Atehortua maintains that the error in the presentence report makes his sentence illegal. Not so. Even if the presentence report had said that the severity rating is one, Judge Moody lawfully could have imposed a 15-year sentence. Estimates in reports do not change statutory ranges or cabin district judges' discretion. That Atehortua sold roughly one kilo of cocaine is established. Applying 28 C.F.R. § 2.20 to this fact does not yield a second "fact"; legal consequences of facts are not themselves facts. See *United States v. Dean*, 752 F.2d 535, 544–45 (11th Cir.1985), declining to treat a judge's error in foreseeing the Parole Com-

mission's approach to a case as one of fact under Fed.R.Crim.P. 32; *United States v. Katzin*, 824 F.2d 234, 239 (3d Cir.1987), declining to treat the quantity and purity of the drug as a question that must be resolved at the Rule 32 hearing.

We do not pursue esoterica about when a judge's erroneous estimate or opinion about consequences of facts is "misinformation of constitutional magnitude" for purposes of *United States v. Tucker*, 404 U.S. 443, 447, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972), on which see *United States ex rel. Villa v. Fairman*, 810 F.2d 715, 718–19 (7th Cir.1987), for two reasons. First, Atehortua forfeited his opportunity to contest this estimate at sentencing; second, the district court has told us that the estimate was irrelevant to the sentence.

■ Rule 32 is designed to bring into the open facts affecting the sentence, and it requires the accused to object to any assertion in the presentence report with which the accused takes issue. The judge is free to rely on any averment not controverted, Rule 32(c)(3), unless there is plain error, Rule 52(b). E.g., *United States v. Carmel*, 801 F.2d 997, 1000 (7th Cir.1986); *United States v. Ray*, 683 F.2d 1116, 1121 (7th Cir.1982); *United States v. Plisek*, 657 F.2d 920, 924–25 (7th Cir.1981). Atehortua has not found any case excusing failure to raise an objection to the presentence report in a timely fashion; neither have we.

Atehortua's case shows the value of the contemporaneous-objection requirement. Under the Parole Commission's regulations, an offense passes from level five to level six when the amount, converted to 100% purity, exceeds 1,000 grams. Bartnicki's letter confessing error asserts that the amount involved is "980.35 grams of 100% pure cocaine." That figure comes from page 2 of the presentence report Bartnicki prepared, which says that Atehortua sold "999.98 grams of 98% pure cocaine with a total net weight of 979.98 grams" and that police found in Atehortua's house a grinder "containing .4 grams of 93% pure cocaine with a total net weight of .37 grams". If their sum, 980.35 grams,

is the total, then 28 C.F.R. § 2.20 Item 921(f) assigns a severity level of five. But is this the full amount? The lab report analyzing the cocaine sold by or seized from Atehortua is not in the record. Quantity appears in the record only in the written plea agreement and the Rule 11 colloquy. The indictment charged, and Atehortua promised in writing to plead guilty to, the sale of "1145.5 grams of a mixture containing cocaine". In open court the Assistant United States Attorney represented that "[t]he white powder was later determined to be 98 percent pure cocaine with a weight of 1145 and a half grams." Atehortua acknowledged that he sold this and never contested the amount.

When Atehortua and his lawyer received the presentence report, then, there were two glaring discrepancies: between the 1145.5 grams Atehortua had conceded selling and the 999.98 grams Bartnicki mentioned, and between Bartnicki's computation of 980.35 grams total (implying level five) and his statement that the Parole Commission would treat the offense as a level six crime. Something was amiss. Counsel for Atehortua should have flagged these inconsistencies for Judge Moody's attention. Neglect cannot be excused on the ground that the application of the Commission's rules is too arcane. Courts assume that the man in the street knows the entire criminal code ("ignorance of the law is no excuse"); counsel's failure to object within five seconds to an esoteric evidentiary problem may surrender the point; is it too much to expect counsel to brush up on rules that will be important to the sentence? To forgive the omission is to reward (and encourage) ignorance. Anyway, the real oversight lay not in the application of the regulation but in the determination of the amount, a question of fact.

Maybe Atehortua's lawyer made a tactical decision not to protest Bartnicki's estimate of "level six" because, had he done so, the prosecutor would have had every reason to point out that the only evidence of record showed a quantity of 1145.5 grams, exceeding the figure Bartnicki reported. Counsel might think that the district judge would be more influenced by the quantity sold than by how the Parole Commission would respond to its purity. Whether or not the election was strategic, silence prevailed. The record *still* shows only the figure of 1145.5 grams of 98% purity. Having bypassed his opportunity to make a record, Atehortua cannot demand that we assume that 999.98 grams is the right figure, recalculate the severity rating, and then tax the district judge with error.

■ At all events, the judge looked at Atehortua's sentence a second time and told us that he was not influenced by Bartnicki's estimate. This second-look is common under Rule 32. If the defendant objects to a statement in the presentence report and the district judge neglects to say whether he has (a) determined that the assertion is correct, or (b) ignored the assertion, we remand so that the finding may be made. If the judge opts for (b), either initially or on remand, that is that. *Andrews v. United States*, 817 F.2d 1277, 1280 (7th Cir.1987); *United States v. Ryan*, 810 F.2d 650, 657 (7th Cir.1987); *Kramer v. United States*, 798 F.2d 192, 195 (7th Cir.1986). The district judge here chose (b), and we have no basis on which to doubt his statements. Judge Moody meted out an eight-year sentence because of Atehortua's *crime*, not because of what he thought the Parole Commission would do.

A judge is entitled to give the sentence he deems appropriate to offense and offender, allowing the Commission to decide how much shall be served. Even a judge who wants to give a sentence tailored to the parole release date may be unable to do so. *United States v. Addonizio*, 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979) (the judge's shock at the Commission's action does not allow him to reduce the sentence after the 120 days provided by Rule 35(b) has expired). For all we know, the Commission will treat Atehortua's offense as a level six, relying on his admission that he sold 1145.5 grams of 98% pure cocaine. Such a decision will be beyond any court's power to disturb. *Kramer v. Jenkins*, 803 F.2d 896 (7th Cir.), on rehearing, 806 F.2d 140 (1986); cf. *Levesque v. Brennan*, 864 F.2d 515 (7th Cir.1988). Because the Com-

mission rather than the court has the last word, it is simple prudence for the district judge not to try to foresee the Commission's computation. An offense-based sentence, such as the one meted out to Atehortua, is not vulnerable to a claim that the Commission's future acts had to be taken into account.

Although there are no grounds on which to upset the sentence, this court is disturbed by the lackadaisical attitude of Kevin E. Milner, the Assistant United States Attorney who prosecuted Atehortua and defended the sentence on this appeal. While asserting that Atehortua's claims are forfeit because his counsel did not make a timely objection, Milner made it clear that he had relied on Bartnicki's computation and therefore didn't know how much cocaine Atehortua sold. Milner revealed that he had not checked the computations at the time of sentencing; when we asked whether the lab report was in the record, he said that he thought so but owned that he hadn't looked recently and maybe had not read it at all. Why, when the appeal focuses on the amount of drug sold, the prosecutor couldn't peruse the record before filing the brief and presenting oral argument, is beyond us. A prosecutor has an ethical obligation to ensure that defendants are sentenced on the basis of accurate information. Victory for the government lies in the *right* decision, not a favorable decision. Milner's omission did not cause a miscarriage of justice. Still, there can be no congratulations for an adventitious victory.

AFFIRMED.