923 F.2d 856
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Manuel RUIZ-VALDEZ, Defendant-Appellant.
 No. 89-3501.
 United States Court of Appeals, Seventh Circuit.
 Argued Sept. 14, 1990.
Decided Jan. 9, 1991.
Rehearing and Rehearing En Banc Denied Feb. 11, 1991.
 
 1
 Before CUMMINGS, and MANION, Circuit Judges, and GRANT, Senior District Judge.*
 
 ORDER
 
 2
 A jury convicted Manuel Ruiz Valdez (Ruiz) of conspiracy to distribute cocaine, three counts of distributing cocaine, and one count of using a telephone to facilitate the distribution of cocaine. The district court sentenced Ruiz under the sentencing guidelines to 160 months imprisonment. Ruiz appeals both his conviction and sentence. We affirm.
 
 I.
 
 3
 Ruiz first argues that the district court clearly erred in finding at sentencing that he had distributed at least 30 kilograms of cocaine. Distribution of 30 kilograms of cocaine results in a Base Offense Level of 34 and given Ruiz's criminal history category of I, a sentencing range of 151 to 188 months. Ruiz argues the evidence shows he distributed at most 12-13 kilograms, which would result in a Base Offense Level of 32 and a sentencing range of 121-151 months. See Guidelines Secs. 2D1.1(3) and 5A (Sentencing Table).
 
 
 4
 The district court did not clearly err in determining that Ruiz distributed at least 30 kilograms of cocaine. Jovino Ramirez testified at trial that Ruiz brought him from Mexico to the United States to work in Ruiz's drug business. Ramirez stated that he made at least 12 or 13 trips from Rockford to Elgin, Illinois, to pick up cocaine from Raul Soto, Ruiz's supplier. On at least one of those trips, Ramirez transported three kilograms. Ramirez testified that during the time he worked for Ruiz, he transported approximately 30 kilograms of cocaine. Ramirez also pleaded guilty to conspiring with Ruiz to traffic in 30 kilograms of cocaine, and in statements to an FBI agent admitted to transporting 30 to 40 kilograms. Since Ramirez's testimony that he transported 30 kilograms was not inherently unbelievable, those statements alone provided a sufficient basis for the district judge to find that Ruiz trafficked in 30 kilograms of cocaine.
 
 
 5
 Moreover, other evidence corroborated Ramirez's statements. Maria Correa testified that Ramirez had told her that he had transported 30 kilograms of cocaine for Ruiz. Other testimony by Correa as well as tape recordings of drug deals between Correa and Ruiz tended to show Ruiz regularly bought and sold kilograms or greater quantities of cocaine. Finally, telephone records admitted at trial showed that during a several-month period Ruiz and Soto (Ruiz's supplier) exchanged at least 114 phone calls. All this evidence tends to show Ruiz was a larger-scale cocaine dealer than he admits, and buttresses Ramirez's statements that he had transported at least 30 kilograms of cocaine for Ruiz. The district court's finding that Ruiz distributed 30 kilograms was not clearly erroneous.
 
 
 6
 Ruiz also argues that even if the district court could find Ramirez transported 30 kilograms of cocaine, the court could not properly attribute this entire amount to Ruiz. According to Ruiz, this amount of cocaine was not specified in the counts for which he was convicted, and the government did not show the 30 kilograms Ramirez allegedly transported were attributable to Ruiz's relevant conduct, which Ruiz defines as conduct that is "part of the same course of conduct or common scheme or plan" as the offenses for which he was convicted. See Guideline Sec. 1B1.3(a)(2). Ruiz did not raise this argument in the district court, however, so he has waived it unless the district court committed plain error. See United States v. Atehortua, 875 F.2d 149, 151 (7th Cir.1989). There is no error here, plain or otherwise. Count VII of the indictment specifically charged Ruiz with conspiring with Ramirez to traffic in 30 kilograms of cocaine. The jury convicted Ruiz on this count. Moreover, Ramirez testified he delivered 30 kilograms of cocaine "from Elgin for Mr. Ruiz." In other words, Ramirez's testimony was that he delivered 30 kilograms to Ruiz as part of his ongoing work in Ruiz's cocaine distribution business--that is, as part of his conspiracy with Ruiz. Thus, it is clear that the 30 kilograms were part of Ruiz's "offense of conviction," see Guidelines Sec. 1B1.3, so any argument that the 30 kilograms are not part of Ruiz's "relevant conduct" is frivolous.
 
 II.
 
 7
 Ruiz next argues we must reverse his conviction because the government violated his right to due process by failing to timely disclose evidence that impeached government witness Correa's credibility. Several months before trial, Correa's boyfriend had been charged with reckless driving. Correa brought her boyfriend's brother to court and, acting as the brother's interpreter, had him plead guilty in her boyfriend's stead. Illinois authorities discovered this fraud, and Correa eventually pleaded guilty to contempt of court charges. According to the government, several weeks before trial the Assistant United States Attorney who tried Ruiz's case notified Ruiz's attorney and told him Correa was involved in some kind of fraud. Three days before trial, the AUSA found out the details of the fraud. The next day, the AUSA wrote Ruiz's attorney a letter disclosing the incident.
 
 
 8
 Ruiz complains that his attorney did not learn the details about Correa's fraud on the state court until his trial had already started. But Ruiz has presented nothing to contest the government's assertions regarding the disclosure the AUSA made to Ruiz's attorney, which indicates the government did notify Ruiz's attorney about Correa's fraud before trial. Ruiz complains that the AUSA's letter was "curiously vague." But since Ruiz has not bothered to include a copy of the letter in the record on appeal or in his appendix, we have no way of knowing exactly what the letter stated.
 
 
 9
 Even assuming disclosure did not come until the trial had already begun, the disclosure was not so untimely as to violate due process. Due process does not require pretrial disclosure of impeachment material. Disclosure of impeachment material is timely and satisfies due process so long as it "is made before it is too late for the defendants to make use of any benefits of the evidence...." United States v. Zipperstein, 601 F.2d 281, 291 (7th Cir.1979); see also United States v. Adams, 834 F.2d 632, 634 (7th Cir.1987). Ruiz's attorney was able to cross-examine Correa extensively about her fraud, and to use that fraud to argue to the jury that Correa was not a credible witness. Moreover, if Ruiz's attorney needed more time to develop Correa's cross-examination, he could have asked for a continuance; he did not. Thus, even if we assume disclosure was not made until after trial had begun, this "late" disclosure did not deprive Ruiz of due process.
 
 III.
 
 10
 Ruiz's third argument on appeal is that since the trial evidence was such that the jury could have found he participated in several small conspiracies to sell cocaine rather than one larger conspiracy, the district court erred by not giving an instruction addressing the issue of multiple conspiracies. Ruiz did not ask for a multiple conspiracy instruction at trial. Therefore, we may reverse Ruiz's conviction only if the failure to give such an instruction was plain error. United States v. Grier, 866 F.2d 908, 932 (7th Cir.1989). A "plain error" is an error that results in a miscarriage of justice, which implies that but for the error the jury probably would not have convicted the defendant. United States v. Mejia, 909 F.2d 242, 247 (7th Cir.1990).
 
 
 11
 Ruiz argues only that the judge should have given a multiple-conspiracy instruction. Ruiz does not, however, tell us (even in general) what such an instruction should have said, or what the judge should have told the jury to do if it found multiple conspiracies. It is difficult if not impossible to determine that the jury probably would have acquitted Ruiz of conspiracy if the judge had given a "multiple-conspiracy instruction" without even knowing what Ruiz thinks such an instruction should have told the jury to do.
 
 
 12
 Perhaps Ruiz is arguing the court should have told the jury to acquit him if he did not join exactly the conspiracy charged in Count VII of the indictment. But in United States v. Wozniak, 781 F.2d 95, 97 (7th Cir.1985), we held that "[a] jury should be told no such thing. Quite the contrary, a jury may be told to convict a defendant who committed some variant of the events charged in the indictment, so long as the variant is also illegal.... So long as the indictment gives notice of the crime charged, the prosecutor may narrow its scope at trial." Here, the indictment charged Ruiz conspired with Ramirez to distribute cocaine. Even if the jury could believe Ruiz and Ramirez engaged in numerous small conspiracies rather than one large conspiracy, the jury could convict Ruiz for engaging in one of these smaller conspiracies.
 
 
 13
 Moreover, the district court did instruct the jury that it could convict Ruiz only if it found he was a member of the conspiracy charged in Count VII. Thus, even if a multiple-conspiracy instruction had been proper, the court adequately addressed the issue of what conspiracy the jury could properly convict Ruiz of joining. In any event, given the evidence that tended to show Ruiz was running an ongoing cocaine business and recruited Ramirez to be his helper, it is doubtful a multiple-conspiracy instruction would have made any difference in the outcome of this case. Thus, even if not giving a multiple-conspiracy instruction was error, it was not plain error.
 
 IV.
 
 14
 Ruiz finally argues that the federal sentencing guidelines violate due process because they deprive a defendant of his right to individualized sentencing. We have rejected this argument several times, as has every other federal court of appeals that has considered it. See United States v. Pinto, 875 F.2d 143, 144-46 (7th Cir.1989); United States v. Bigelow, 914 F.2d 966, 972 (7th Cir.1990) (citing cases from this and other circuits). We are convinced these cases are correct; we need say nothing more on this issue.
 
 
 15
 AFFIRMED.