UNITED STATES of America,
Plaintiff–Appellee,

v.

William Scott BLYTHE, Defendant–
Appellant.

No. 90–2867.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 11, 1991.

Decided Sept. 18, 1991.

C. Joseph Russell, Asst. U.S. Atty. (argued), Indianapolis, Ind., for U.S.

F. Allen Tew, Jr. (argued), Indianapolis, Ind., for defendant-appellant.

Before CUMMINGS and FLAUM, Circuit Judges, and GRANT, Senior District Judge.*

GRANT, Senior District Judge.

After pleading guilty to two counts of possession with intent to distribute and distribution of the narcotic controlled substance "Dilaudid," William Scott Blythe was sentenced to 45 months of imprisonment and 3 years of supervised release and drug te~~~~the alleges due process violatio~~~~ sentencing proceedings. For the following reasons we affirm the sentence imposed by the district court.

## I. FACTS

William Scott Blythe was arrested for selling Hydromorphone HC1, known by the brand name "Dilaudid," on two occasions to a special agent of the Drug Enforcement Agency [DEA]. On February 28, 1990, he was indicted under 21 U.S.C. § 841(a)(1) for unlawful possession and distribution of a total of 370 Dilaudid tablets, 4 milligrams each. On May 17, 1990, he agreed to plead guilty to both counts and to cooperate with the government. The plea agreement set the maximum penalty per count of 20 years in prison, 3 years of supervised release, and a $1 million fine. Although the document made clear that the court was not bound by the plea agreement and had sole discretion to make the final determination of the appropriate Guideline range applicable to Blythe's sentence, the defendant and the government jointly recommended in the agreement the following offense level:

> 7. In light of the understandings set forth above, the parties hereto agree and recommend to the Court that the appropriate initial offense level for each of the two counts charged in the Indictment herein is 24 pursuant to Guideline § 2D1.1(a) and (c) and that a reduction in the offense level from 24 to 22 is appropriate based upon Defendant's acceptance of responsibility pursuant to Guideline § 3E1.1(a)....

> 8. In consideration for Defendant's agreement to plead guilty to both counts of the Indictment, as well as his agreement to cooperate, as set forth above, the Government agrees to recommend the imposition of an executed sentence of less time than indicated in the Guidelines for an offense level 22 without recommending a specific term of years....

Along with the plea agreement the government also submitted a Guideline § 5K1.1 Statement describing Blythe's cooperation with DEA agents and his agreement to testify against another drug dealer.

However, on July 10, 1990, the government filed a motion to withdraw the original plea agreement, explaining that it had discovered new facts and circumstances that voided the first agreement. The new information was notification by the defendant, through his attorney, that he had been selling drugs during the plea negotiation period. On the same day the parties filed their "Revised Memorandum of Final Plea Agreement," which contained provisions identical to the first agreement, with one distinction: The government omitted its agreement to recommend an initial offense level of 24 and a downward departure of two levels for Blythe's cooperation. On July 13, 1990, the court granted the government's motion and ordered the first plea agreement withdrawn.

There followed a number of filings by the defendant. On July 16, 1990, Blythe filed "Defendant's Statement of Facts," setting forth his version of the circumstances underlying the charged offenses, and explaining his cooperation with the government in their investigation of another suspected dealer. Two days later he filed a "Notice to Court that Defendant's Petition to Enter a Plea of Guilty Remains in Full Force and Effect." And on August 8, 1990, he filed a "position paper" objecting to the presentence investigation report and urging the court to find the applicable Guideline level to be 12.

---

* The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

Meanwhile, the government sent a letter on July 27, 1990 to Blythe's probation officer, with a copy to Blythe's counsel, objecting to the probation officer's computation of the base offense level for sentencing Blythe. He explained therein the reasons for changing the offense level, based on the weight of the narcotic, from 12 to 24. On August 9, 1990, an addendum to the presentence report was filed; it was a comprehensive statement of the objections raised to the presentence report by the government and the defendant. Specifically, the addendum discussed the government's argument for an upward departure in the sentence, and the defendant's arguments for a base level of 12 and a two-level reduction. The Defendant obtained the addendum on August 10, 1990, the day of sentencing.

At the sentencing hearing Blythe pled guilty. After ascertaining that the defendant himself had seen the presentence report and had no objections to it, the court heard the unsworn testimony of a DEA agent, who described the two drug purchases by another DEA agent, the lab analysis of the Dilaudid, and the defendant's cooperation with the government. The court allowed Blythe and his counsel to speak in mitigation of his offense before proceeding with sentencing. Blythe's attorney explained the initial agreement that the total base offense level would be 12, and argued that, by changing the level to 24, the government had misled Blythe.

The court used the total weight of the narcotic in calculating the sentence for Blythe. Finding that the base offense level was 24, it allowed a two-point reduction for "acceptance of responsibility" because of Blythe's substantial cooperation with the government. The resulting imprisonment range was 41 to 51 months; the court then imposed a sentence of 45 months of imprisonment on each count, to be served concurrently, followed by 3 years of probation. Blythe filed this appeal. Pursuant to the jurisdiction granted an appellate court under the Sentencing Reform Act, we review this sentence for error of law and for misapplication of the sentencing guidelines. *See* 18 U.S.C. § 3742(a) and (d).

## II. ANALYSIS

### A. *STANDARD OF REVIEW*

The defendant admits that he did not object at the sentencing hearing to the errors he now alleges to be due process violations. The failure to raise a challenge before the sentencing court results in a waiver of the issue on appeal. *United States v. Macias*, 930 F.2d 567, 570 (7th Cir.1991). Because the defendant did not preserve this issue by proper objection below, the court's ruling may be reversed only if "plain error" was committed. *United States v. White*, 903 F.2d 457, 466 (7th Cir.1990) (citing *United States v. Wynn*, 845 F.2d 1439, 1442 (7th Cir.1988)).

The plain error doctrine requires appellate courts to correct "particularly egregious errors." *United States v. Frady*, 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982). The Supreme Court requires the error to be "obvious as well as significantly prejudicial." *Peretz v. United States*, —— U.S. ——, 111 S.Ct. 2661, 2678, 115 L.Ed.2d 808 (1991). If the district court's error is "palpably wrong," *United States v. Kehm*, 799 F.2d 354, 363 (7th Cir.1986), and if we are "convinced that it is necessary in order to avert an actual miscarriage of justice," *United States v. Requarth*, 847 F.2d 1249, 1254 (7th Cir. 1988) (quoting *United States v. Silverstein*, 732 F.2d 1338, 1349 (7th Cir.1984), *cert. denied*, 469 U.S. 1111, 105 S.Ct. 792, 83 L.Ed.2d 785 (1985)), we will reverse the district court's decision. It is under this narrow standard that we consider the defendant's contentions on appeal.

### B. *SENTENCING HEARING CHALLENGES*

1. *Contentions concerning addendum to presentence report*

Blythe raises three issues concerning the addendum to the presentence investigation report filed by the government: first, that a due process violation occurred as a result of its untimely delivery to Blythe; second, that the government misled him by sug-

gesting initially that it would recommend a base offense level of 12 but later, in the addendum, raising the level to 24; and third, that the court considered only the addendum and not the full presentence report. We comment, as well, on the proper method for challenging the content to an addendum.

### a. *Untimely delivery to defendant*

Blythe informs us that, under 18 U.S.C. § 3552(d), a presentence report must be given to the defendant and his counsel at least ten days prior to the date set for sentencing. He asserts that his receipt of the addendum to the presentence report on the day of sentencing was a denial of his due process rights under that provision. He further contends that the sentencing judge erred by failing to ask the defendant whether he had discussed both the report and the addendum with his counsel.

■■■ Mr. Blythe's argument goes astray at the initial point, when he omits a crucial portion of the statutory text:

> The court shall assure that a report filed pursuant to this section is disclosed to the defendant, the counsel for the defendant, and the attorney for the Government at least ten days prior to the date set for sentencing, *unless this minimum period is waived by the defendant.*

18 U.S.C. § 3552(d) (emphasis added). The defendant may waive that period by failing to assert his rights at the appropriate time. *United States v. Busche,* 915 F.2d 1150, 1151 (7th Cir.1990). In this case neither Blythe nor his lawyer asked for additional time. Answering questions by the court, the defendant stated that he had looked at the presentence report and had no objection to it. Despite numerous opportunities before and during the sentencing hearing, he did not inform the court that he wanted to invoke his entitlement to the ten-day period. The burden of asserting that ten-day period is placed on the defendant rather than the judge; a defendant's silence surrenders any rights he may have had under § 3552(d).

By saying that the defendant may waive the 10 days in which to study the presentence report, § 3552(d) gave the defendant charge of the timing. Nothing in the text or structure of the law implies that the district court must initiate a colloquy along the lines of Fed. R.Crim.P. 11(c) to determine whether the accused understands this. Defendants therefore may surrender their right under § 3552(d) by participating in sentencing without objection.

*Id.* We find that Blythe waived his right to a ten-day review period under § 3552(d) by failing to assert it at the appropriate time. As we said in *Busche,* a defendant's election to participate in sentencing without objection, "whether advertent or not, is conclusive." *Id.*

The court was not asked to postpone the sentencing hearing, and it did not. Was Blythe significantly prejudiced because the hearing was conducted on the same day that the addendum was filed? Certainly not. Nothing in the addendum was new; it clearly and fairly presented both parties' objections to the presentence report and offered the probation office's response. Blythe had long known that 24 was the government's recommended base level, and he had agreed to it in the plea agreement filed May 17, 1990. Furthermore, the court had before it defense counsel's written objections to the initial offense level, and heard his oral arguments on this issue at the hearing. After reviewing the transcript of the hearing, we find that the court fully accorded the defendant and his counsel "an opportunity to comment upon the probation officer's determination and on other matters relating to the appropriate sentence," as required by Fed.R.Crim.P. 32. Under the circumstances herein, no miscarriage of justice can possibly be found in the court's holding of the sentencing hearing on the day that the addendum was filed. We hold that the court committed no plain error by proceeding with the sentencing.

### b. *Content of addendum: base offense level*

■■ We note that Blythe points out only one difference between the original presen-

tence report and the addendum, namely the change in the sentencing recommendation from base level 12 to 24. Blythe asserts that the addendum falsely represented the government's recommended base level as 24 rather than 12, and that the government misled him by originally suggesting 12 as the appropriate guideline level.

We find this argument to be devoid of any merit. As was discussed above, the original plea agreement, signed by Blythe, recommended 24 as the appropriate offense level. The revised one, which omitted a recommendation after it was learned that Blythe was still dealing drugs, reiterated the recommended maximum sentence and gave no intimation that the government would propose a lower offense level. The defendant persisted in his guilty plea, nevertheless, and neither objected to the base level of 24 nor attempted to renegotiate the agreement. He was well aware of the government's objections to the original presentence report and its intention to recommend a level based on the figures to which Blythe had consented in the plea agreement. And yet, at the sentencing hearing, Blythe refused to withdraw or challenge the plea, even when the court advised him of his right to change his mind. We find nothing misleading in the government's treatment of Blythe.[1]

We further find that the addendum to the presentence report neither misrepresented the government's position nor prejudiced the defendant. As was shown above, nothing in the addendum was new or surprising. The hearing transcript reflects that Blythe's attorney informed the court of the discrepancy in the base level recommendations, and the court considered the matter before ruling that 24 was the proper base level. There is no hint of error in the court's conduct.

We hold that no prejudice, substantial or otherwise, can be found in the court's consideration of the initial offense levels recommended in the presentence report, the addendum, and the hearing. Our review of the record reveals that the court sentenced Blythe on the basis of accurate information presented by both the defendant and the government, and committed no error at arriving at the base level of 24.

■ There are three other reasons that Blythe's claims concerning the addendum cannot succeed. The first is that Blythe had no right to the sentencing recommendation. Due process guarantees that a defendant see the presentence report in his case and have the opportunity to refute its contents before the district court; but there is "no constitutional or statutory right to be informed of a particular sentencing recommendation made by the probation office to the district court." *United States v. Heilprin,* 910 F.2d 471, 474 (7th Cir.1990). Pursuant to Rule 32(c)(3) of the Federal Rules of Criminal Procedure, the court is required to permit the defendant to read the presentence report *"exclusive of any recommendation as to sentence."* Fed.R.Crim.P. 32(c)(3)(A).

■ Second, if Blythe believed that the suggested base offense level of 24 was inaccurate, he was obliged under Rule 32(c)(3)(D) of the Federal Rules of Criminal Procedure to inform the district court of any error in the presentence report prior to, or at, the sentencing hearing. When given the opportunity to challenge the report by the court, Blythe declined. By failing to raise his objection in a timely fashion, he has waived the right. *United States v. Stout,* 882 F.2d 270, 272 n. 3 (7th Cir.1989); *United States v. Atehortua,* 875 F.2d 149, 151 (7th Cir.1989).

■ And third, in any case a sentencing judge is not bound by the presentence report's recommendations concerning sentence. *Heilprin,* 910 F.2d at 475. The reasons given by the court for the sentence were well-founded and reflect no error

---

1. Blythe has also argued that the court did not resolve the factual dispute concerning the government's "inducement" of Blythe's guilty plea by a promise of recommending a base level of 12. This contention is equally without merit. In light of the comprehensive plea agreements, the appended Acknowledgement, the defendant's reassertion of his desire to plead guilty, his answers to the court that his plea was voluntary and not induced, and the record before this appellate court, we are surprised that the defendant has the audacity to make this claim.

whatsoever. Because we find that the Guidelines were correctly applied to findings of fact that were not clearly erroneous, we see no reason to disturb the sentence below. 18 U.S.C. § 3742(e). *See United States v. Hassan,* 927 F.2d 303, 306 (7th Cir.1991); *United States v. Vopravil,* 891 F.2d 155, 157 (7th Cir.1989).

### c. *Court's review of addendum alone*

■ The defendant claims that his probation officer informed him after the sentencing hearing that, according to standard filing procedure in the Southern District of Indiana, the court had before it only the addendum to the presentence report, and not the full report. He asserts that his due process rights were thereby violated, both because the addendum did not contain the matters comprehensively found in the original report, and because the addendum, which did not properly reflect the defendant's objection to the offense level of 24, was materially erroneous.

Such an allegation, arising from information outside the record before the court, will not be considered in this appeal.

> The defendant's present citation to evidence outside the record to establish his version of the truth, which he alleges conflicts with the government's, is of no avail in the context of appellate review.... An appellant may not attempt to build a new record on appeal to support his position with evidence that was never admitted in the court below.

*United States v. Phillips,* 914 F.2d 835, 840 (7th Cir.1990) (citing cases).

We feel compelled to comment, however, that the defendant offers no evidence to support his allegation, and indeed the record refutes the claim. The district court told Blythe at the hearing that it had his presentence report, and invited the defendant to comment on it. The judge's questions and comments throughout the hearing reflect his full and thorough knowledge of the record before him, a record that certainly included the presentence report. Moreover, the addendum itself explained the defendant's position that the offense level should be 12. We will not entertain such empty allegations.

### 2. *Sentencing based on gross weight*

■ One last point should be considered. Although no objection was made to the addendum, in his "position paper" concerning sentencing and in his counsel's closing argument for mitigation of the sentence Blythe did contend that the offense level must be based on the net, rather than gross, weight of the drug. However, the court rejected that proffered approach, finding instead that the government's use of gross weight of the drug was correct.[2]

We find that the district court correctly upheld the use of the gross weight of the drug in calculating the base offense level. Under both the statute, 21 U.S.C. § 841, and the Sentencing Guidelines, § 2D1.1(c), the penalty for drug possession and distribution is determined by the quantity of the "mixture or substance containing a detectable amount" of a drug rather than the amount of pure drug. *United States v. Marshall,* 908 F.2d 1312, 1317 (7th Cir. 1990) (en banc), *aff'd sub nom. Chapman v. United States,* — U.S. —, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991). In *Marshall* this court upheld the constitutionality of sentences based on the gross weight of drug plus the medium in which it is sold:

> Distributors pick their poison. The penalties are plain for all to see. They decide what drug to peddle, on what medium.... Retailers who select sugar rather than blotter paper on which to sell LSD must accept their fate.

*Marshall,* 908 F.2d at 1325. *See also United States v. Garcia,* 925 F.2d 170, 172 (7th Cir.1991). The Supreme Court affirmed

---

**2.** The total gross weight of the Dilaudid (hydromorphone HC1) tablets, according to the DEA Laboratory reports, was 34.92 grams. In the Sentencing Commission's Drug Equivalency Tables, under "Schedule I or II Opiates," hydromorphone is listed as being equal to 2½ times its weight in heroin. Blythe's sale of 370 Dilaudid tablets weighing 34.92 grams was therefore equal to 87.3 grams of heroin. The drug quantity table in Sentencing Guideline § 2D1.1 places 80–100 grams of heroin at base offense level 24. The sentencing range for that level· is 41–51 months.

*Marshall,* finding that Congress reasonably established a sentencing system based on the "mixture or substance containing a detectable amount" of the prohibited drug:

By measuring the quantity of the drugs according to the "street weight" of the drugs in the diluted form in which they are sold, rather than according to the net weight of the active component, the statute and the Sentencing Guidelines increase the penalty for persons who possess large quantities of drugs, regardless of their purity. That is a rational sentencing scheme.

*Chapman v. United States,* 111 S.Ct. 1919, 1927–28 (1991) (holding that the weight of the blotter paper containing LSD, and not the weight of the pure LSD, determines eligibility for the minimum sentence). And the D.C. Circuit recently applied *Marshall* specifically to the drug Dilaudid, holding that Dilaudid is a "mixture or substance" containing hydromorphone. *United States v. Shabazz,* 933 F.2d 1029, 1032 (D.C.Cir. 1991). *Accord, United States v. Meitinger,* 901 F.2d 27, 29 (4th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 519, 112 L.Ed.2d 531 (1990); *United States v. Bayerle,* 898 F.2d 28, 32 (4th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 65, 112 L.Ed.2d 39 (1990).

 We conclude that the court properly based its sentence on the total weight of the Dilaudid, and followed the Guidelines in determining the sentence. Since proof of the sentencing factors under the Guidelines by a preponderance of the evidence satisfies due process, *United States v. Ross,* 905 F.2d 1050, 1054 (7th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 172, 112 L.Ed.2d 136 (1990), we hold that there was no violation of due process in Blythe's sentencing.

### 3. *Court's admission of unsworn testimony*

The defendant charges that his constitutional right to confront witnesses was jeopardized because the DEA agent testifying at the sentencing hearing was not placed under oath by the court. Once again we note that Blythe did not object to the court's acceptance of testimonial evidence from the unsworn witness. The defendant was also advised that, by pleading guilty, he would waive his right to confront and cross-examine the witnesses against him.

 The rule that a witness be sworn before testifying does not apply to sentencing proceedings. Fed.R.Evid. 1101(d)(3). Once the guilt of a defendant has been established, the sentencing judge may, consistent with the due process clause, consider responsible unsworn testimony. *United States v. Harris,* 558 F.2d 366, 373 (7th Cir.1977), *quoted in United States v. Barnes,* 907 F.2d 693, 695 n. 3 (7th Cir.1990). Although unreliable hearsay statements of a confidential informant may be improper bases for the court's reliance, *see Barnes,* 907 F.2d at 696–97, Blythe gives us no reason to question the integrity or reliability of the testimony of the DEA agent. We hold that no due process violation occurred because of the sentencing court's reliance on the unsworn testimony of a DEA agent. *See also United States v. Nesbitt,* 852 F.2d 1502, 1521 (7th Cir.1988), *cert. denied,* 488 U.S. 1015, 109 S.Ct. 808, 102 L.Ed.2d 798 (1989).

### III. CONCLUSION

The defendant's contentions concerning the addendum to the presentence report are insubstantial. His complaint that the government misled him is inaccurate. His claim that the court viewed only the addendum is purely hypothetical and outside the record of this case. His assertion that sentencing must be based on net rather than gross weight of the drug has no legal basis. And his objection to unsworn testimony at the sentencing hearing is wrongly based on trial rather than sentencing due process rights. We found above that these arguments failed; the remaining claims not addressed herein were completely without merit.

We hold that there was certainly no "plain error" in the court's sentencing proceedings and AFFIRM the sentence imposed.