**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Eric HUMPHREY, Defendant–Appellant.**

No. 97–3924.

United States Court of Appeals,
Seventh Circuit.

Argued June 3, 1998.

Decided Aug. 20, 1998.

Judith A. Stewart, Barry D. Glickman (argued), Office of the United States Attorney, Indianapolis, IN, for Plaintiff–Appellee.

Suzanne Philbrick (argued), Portage, IN, for Defendant–Appellant.

Before BAUER, EASTERBROOK, and RIPPLE, Circuit Judges.

BAUER, Circuit Judge.

A jury found Eric Humphrey guilty of conspiracy to possess with intent to distribute more than 500 grams of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846 and of possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 851. Humphrey appeals the verdict, arguing that: (1) the district court erred in not providing the parties with a copy of a confidential sentencing memorandum which it considered in calculating Humphrey's sentence; and (2) the court committed plain error in finding Humphrey responsible for 2.4 kilograms of cocaine. For the reasons set forth below, we affirm.

## BACKGROUND

From about September 1996 through December 7, 1996, Humphrey was involved in a drug conspiracy with two men—Aundre Ross ("Ross") and Leon Stewart ("Stewart"). Humphrey and Ross met in 1991, but the two lost contact and did not meet up again until August 1996, when they decided to enter into a business venture together. Humphrey was a singer and Ross had some contacts in the music business. To get started in the music business, Humphrey was told that he needed to come up with $5,500. While visiting Ross in Illinois (Humphrey lived in Carmel, Indiana), Humphrey discussed money-making ideas with Ross and his friend Stewart, who also lived in Indiana. The three devised a plan whereby Ross would obtain cocaine from his supplier, and Humphrey and Stewart would distribute the cocaine in Indiana.

According to plan, in September 1996, Ross provided Humphrey with nine ounces of cocaine for $7,500 in cash. About a week later, Humphrey and Stewart traveled to Chicago to obtain their next shipment of 500 grams of cocaine. Stewart was paid $500 to transport the cocaine back to Indianapolis. Approximately a week later, Humphrey traveled to Chicago and paid Ross $11,500 for a half kilogram of cocaine. Soon thereafter, Ross provided Humphrey with two more half kilograms of cocaine, on credit, apparently.

After this last transaction, Humphrey contacted Ross and complained that the cocaine was not of the same quality as the previous purchases. Ross agreed to provide Humphrey with another half kilogram to mix with the poor quality cocaine to make it more marketable. Humphrey traveled to Chicago to pick up the half kilogram. At that time, Humphrey owed Ross approximately $31,000 for his cocaine purchases, and mailed Ross a check via U.S. express mail for $3,500.

In November 1996, Special Agents Homer Markhart and Robert Glynn from the United States Drug Enforcement Administration (DEA) approached and interviewed Stewart based upon information they received that Stewart was transporting cocaine from Chicago to Indianapolis. On November 18, 1996, Stewart admitted that he had been transporting kilograms of cocaine and provided the agents with information about his supply source and about Humphrey.

Stewart agreed to tape record conversations with Ross. These tapes confirmed that Ross had received the payment mailed by Humphrey and that Ross had made several trips to Indianapolis in an attempt to collect the remaining money owed on Humphrey's drug debt. Stewart also participated in two controlled purchases of cocaine. On November 19, 1996, Stewart purchased a half ounce of cocaine from Ross for $500. The following

day, on November 20, 1996, Stewart purchased one ounce of cocaine from Ross for $1,000.

On December 6, 1996, DEA Special Agents Markhart and Noel Gaertner arrested Ross. Ross consented to a search of his apartment, which turned up approximately 143 grams of cocaine, a digital scale, a personal organizer that contained Humphrey's business card, and a mailing package that contained a photograph of Humphrey and a cassette tape with Humphrey's name on the label.

On December 7, 1996, DEA agents executed a search warrant on Humphrey's apartment while Humphrey was not present. The agents seized several items from Humphrey's residence, including receipts from a hotel in Chicago, dated August 1996, an address book that contained Ross's address and phone numbers, an express mail U.S. postal label that matched the tracking number of the express mail package seized from Ross's residence, and an electronic scale.

Humphrey was arrested later that evening at his residence after it was determined that an outstanding bench warrant existed against him for failing to pay child support. A search of his body revealed a plastic bag containing 14.1 grams of cocaine. Following his arrest, Humphrey admitted to Special Agent Gaertner that he had acted as a "broker" for the drugs and that Ross and his supplier had been looking for Humphrey so that they could collect money he owed them for cocaine.

After a two day jury trial, Humphrey was found guilty of conspiracy to possess with intent to distribute more than 500 grams of cocaine and of possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 846, and 851. At his sentencing hearing, the district court informed Humphrey that she had received a confidential memorandum, consistent with the court's routine practice, from the probation officer that contained his recommendation for an appropriate sentence. The sentencing judge went on to explain that the confidential memorandum contained no new factual information, and that, unlike the presentence investigative report, the memorandum would not be disclosed to either party. The court empha-

sized that it was not bound by the confidential memorandum. Humphrey registered no objection to the court's statements. The court went on to attribute 2.4 kilograms of cocaine to Humphrey for the purposes of calculating his base offense level. Humphrey did not object to this amount, and the court accordingly sentenced him to 137 months imprisonment to be served concurrently for each of the two counts. Additionally, the court sentenced Humphrey to a term of supervised release of eight years on Count One and six years on Count Two, to be served concurrently. Because Humphrey committed these offenses while on supervised release, the district court also sentenced him to an additional 18 months for violating the terms of his release. Humphrey filed a timely notice of appeal.

## ANALYSIS

### A. *The District Court's Use of the Confidential Memorandum at Sentencing*

■ Humphrey maintains that the district court committed reversible error when it used a confidential memorandum at sentencing which was not disclosed to the lawyers or the parties, and that this error rose to the level of plain error. According to Humphrey, the memo contained more than a recommendation of fact, and therefore should have been made available to him.

■ Because Humphrey did not object to the district court's use of the confidential memorandum at the sentencing hearing, he waived the issue on appeal. *See United States v. Blythe*, 944 F.2d 356, 359 (7th Cir. 1991). We therefore review his claim under the plain error standard, Fed.R.Crim.P. 52(b), and note that plain error "must be of such a great magnitude that it probably changed the outcome of the trial." *United States v. Jackson*, 974 F.2d 57, 60 (7th Cir. 1992), *cert. denied*, 508 U.S. 977, 113 S.Ct. 2976, 125 L.Ed.2d 673 (1993). We reverse for plain error "only when [we are] convinced that it is necessary to avert an actual miscarriage of justice." *Id.* at 60.

We find no plain error in this case. Rule 32(b)(6)(A) of the Federal Rules of Criminal Procedure provides:

> Not less than 35 days before the sentencing hearing—unless the defendant waives this minimum period—the probation officer shall furnish the presentence report to the defendant, the defendant's counsel, and the attorney for the Government. The Court may, by local rule or in individual cases, direct that the probation officer not disclose the probation officer's recommendation, if any, on the sentence.

As authorized, the District Court of the Southern District of Indiana promulgated a local rule providing that "[t]he operation of Rule 32(b)(6)(A) of the Federal Rules of Criminal Procedure in this District is suspended insofar as the Rule would otherwise require disclosure of a probation officer's recommendation other than to the Court." Local Rule CR 11.1.

The district court was thus entirely within its discretion in not disclosing the probation officer's recommendation. The record reflects that Humphrey was provided with a copy of the presentence investigative report, and therefore knew in advance that his guideline range for sentencing was between 120 and 137 months. Additionally, Judge Barker noted at the sentencing hearing that it was the court's routine practice to receive a confidential memorandum from the probation officer. The recommendation contained no new factual information, and Humphrey registered no objection. *See Blythe,* 944 F.2d at 360. We believe these facts indicate that no miscarriage of justice occurred; the court was correct in not disclosing the probation officer's recommendation.

### B. *Amount of Cocaine*

■ Humphrey next contends that the trial court erred in attributing 2.4 kilograms of cocaine to him in determining his base offense level. He asserts that the testimony of Aundre Ross was so incredible that it should be disregarded, and that he (Humphrey) should therefore only be sentenced based on the 14.1 grams of cocaine found in his coat the day of his arrest. Ross testified at trial to participating in numerous drug transactions with Humphrey, including deals for 9 ounces, one-half kilogram, two one-half kilograms, and another one-half kilogram of cocaine.

■ We review a district court's calculation of the quantity of narcotics attributable to a defendant for clear error. *United States v. Phillips,* 37 F.3d 1210, 1213 (7th Cir.1994). We will affirm the court's findings unless "the entire body of evidence leaves us with the definite and firm conviction that a mistake has been committed." *United States v. Ferguson,* 35 F.3d 327, 333 (7th Cir.), *cert. denied,* 514 U.S. 1100, 115 S.Ct. 1832, 131 L.Ed.2d 752 (1995).

Humphrey correctly asserts that he has a right to be sentenced based on testimony "with a sufficient indicia of reliability to support its probable accuracy." United States Sentencing Guidelines § 6A1.3(a). However, we have repeatedly held that the credibility of witnesses is a question of fact. In reviewing a sentence imposed under the guidelines, "the court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous." 18 U.S.C. § 3742(e). The sentencing court evaluated Ross's testimony, considered the corroborating evidence, and correctly found that Humphrey was responsible for 2.4 kilograms of cocaine. Accordingly, no error occurred.

### CONCLUSION

For the reasons set forth above, we AFFIRM the sentence imposed by the district court.