UNITED STATES of America,
Plaintiff–Appellee,

v.

Teri Ann MEITINGER, a/k/a Gregory
Lewis Meitinger, a/k/a Yvonne Ava
Svensson, a/k/a Teresa Morris, a/k/a
Jenell Anne Dotson, a/k/a Pat Carring-
ton, Defendant–Appellant.

No. 89–5071.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 8, 1989.

Decided April 10, 1990.

Richard William Winelander, Baltimore, Md., for defendant-appellant.

Lisa M. Griffin, Asst. U.S. Atty. (argued), Breckinridge L. Willcox, U.S. Atty., John V. Geise, Asst. U.S. Atty., Baltimore, Md., for plaintiff-appellee.

Before RUSSELL and MURNAGHAN, Circuit Judges, and MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation.

DONALD RUSSELL, Circuit Judge:

The appellant/defendant, Teri Ann Meitinger, was indicted with six co-defendants for conspiracy to distribute dilaudid (a highly addictive painkiller), in violation of 21 U.S.C. § 846, and seven counts of possession with intent to distribute dilaudid, in violation of 21 U.S.C. § 841(a). This indictment was the result of an investigation into the appellant's involvement in a "script" scheme whereby forged prescriptions were used to obtain dilaudid for resale as a street drug. After her arrest, the appellant agreed to cooperate with investigating officials and entered into an agreement with the government, pleading guilty to the conspiracy count.

Included in this agreement was the stipulation of both parties that the appellant was entitled to a two-level reduction of sentence under the provisions of the Federal Sentencing Guidelines as a result of her plea of guilty and an increase of two levels

for her role as an organizer in the conspiracy. The government also agreed to recommend a two-level departure for cooperation.

The parties were unable, however, to agree on the appropriate base offense level. The government took the position that in determining the appropriate offense level under Section 2D1.1 of the Sentencing Guidelines, the entire weight of the seized substance, both narcotic and inert carrier medium, must be considered. The appellant contended that only the weight of the active narcotic should be considered. Under the government's formulation, because scripts prescribing over 1125 grams of dilaudid were seized, a base offense level of 32 was appropriate. Conversely, the formulation urged by the appellant resulted in a base offense level of 26, as the weight of the actual narcotic found in these pills was approximately 50 grams.

The matter was argued before the district court and a base offense level of 32 was set. The court then granted a two-level reduction for acceptance of responsibility and a two-level enhancement for appellant's role as an organizer. Based on the appellant's continuing assistance with the investigation, a two-level reduction of sentence was granted. The court refused, however, to grant a downward departure based on the appellant's status as a first offender; her psychological, emotional and physical duress; the fact that prescription drugs were involved; or the fact that the conspiracy commenced prior to the November 1, 1987, effective date of the Guidelines. The resulting Guidelines range was 97–121 months, and a term of 97 months' incarceration was imposed.

## I.

■ The appellant's first contention is that the district court violated the Constitution's *ex post facto* clause, Art. I § 9 cl. 3, by sentencing her under the Guidelines for her participation in a conspiracy formed before the Guidelines took effect. The appellant argues that even though she was involved in a conspiracy, the existence of which straddled the November 1, 1987, effective date of the Guidelines, the bulk of activity to which she pleaded guilty occurred prior to November 1, 1987. Specifically, the appellant argues that most of the bogus scripts for which she was responsible were drafted prior to November 1, 1987, and her post-November 1, 1987, activity in the conspiracy was limited to the passage of only a few scripts, accounting for a minimal amount of ill-begotten narcotics. Therefore, according to the appellant, in considering the total weight of the narcotics represented by all the bogus scripts when calculating a sentence, the district court impermissibly applied the Guidelines to pre-Guideline activity in violation of the *ex post facto* prohibition. Appellant points out that had the court only considered her script activity after November 1, 1987, an adjusted base offense level of 20 would have been arrived at with a sentencing range of 33 to 41 months. We find no merit to this argument. The contention of the appellant was raised in *United States v. Sheffer*, 896 F.2d 842 (4th Cir.1990), and decided adversely to appellant's contention.

Here, the appellant pleaded guilty to one count of conspiracy. Conspiracy is a continuing offense, and each conspirator is charged with participation for the life of the conspiracy. In this case, the conspiracy continued after the effective date of the Guidelines, and thus the Guidelines are applicable in this case. *See* Sentencing Reform Act of 1984, Pub.L. 98–473, 98 Stat. 1837, 2031, § 235(a)(1) (Sentencing Guidelines apply "only to offenses committed after" the effective date of the Act). We are unpersuaded by the appellant's argument that we must sever those acts committed prior to the effective date of the Act from those committed after the effective date. Each act of drafting a fraudulent script was accomplished in furtherance of the conspiracy, an on-going criminal enterprise. A court may sentence a conspirator under the Guidelines if the conspiracy continued after the Guidelines became effective. *United States v. White*, 869 F.2d 822, 826 (5th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 3172, 104 L.Ed.2d 1033 (1989). Because the appellant pleaded guilty to a

 

conspiracy that continued through December of 1987, and the Guidelines apply to offenses committed after November 1, her Guidelines sentence is not *ex post facto*.

## II.

■ The appellant next argues that the district court improperly based its sentence on the gross weight of the dilaudid prescribed in the seized script as opposed to the weight of the active, illicit narcotic. Such an argument has been addressed and foreclosed by this court in *United States v. Daly*, 893 F.2d 33 (4th Cir.1989) (Under the plain language of the Anti–Drug Abuse Act and the Guidelines, the combined gross weight of a narcotic and any carrier mediums may be used for the purpose of determining base offense levels under Section 2D1.1 [1]).

■ Finally, the appellant claims error in the district court's refusal to depart downwards for mitigating circumstances the appellant asserts are found in this case.[2] Such a refusal came after the district court considered each of the appellant's contentions and found that a further downward departure was inappropriate under the facts of record. It has been held, and we agree, that district court decisions not to depart from the applicable guideline range, either up or down, are not appealable. *United States v. Bayerle*, 898 F.2d 28 (4th Cir.1990); *United States v. Colon*, 884 F.2d 1550, 1552–56 (2d Cir.1989).

We note that the appellant was afforded a favorable adjustment in sentencing for both her plea of guilty and for her cooperation in the investigation of the conspiracy. Further, the district court granted lenity by sentencing the appellant to the minimum sentence mandated by the Guidelines. We are satisfied that when contemplating such a departure the district court considered all relevant facts and reasonable inferences thereto, both aggravating and mitigating.

## III.

For the reasons here set forth, the judgment of the district court is

AFFIRMED.

---

1. Base offense levels for drug offenses are determined from the Drug Quantity Table following Section 2D1.1.

   Consistent with the provisions of the Anti–Drug Abuse Act, if any mixture of a compound contains any detectable amount of a controlled substance, the entire amount of the mixture or compound shall be considered in measuring the quantity.

Note following Drug Quantity Table, Guidelines Section 2D1.1.

2. Appellant points *inter alia* to certain physical, emotional, and psychological trauma as well as her status as a first offender in support of her contention. Apparently, sometime prior to her arrest, the appellant had undergone a sex-change operation, causing her severe emotional instability.