**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Robert LAZARCHIK,
Defendant–Appellant.**

**No. 90–3111.**

United States Court of Appeals,
Eleventh Circuit.

Feb. 21, 1991.

William M. Kent, Asst. FPD, Jacksonville, Fla., for defendant-appellant.

Stephen M. Kunz, Asst. U.S. Atty., Jacksonville, Fla., for plaintiff-appellee.

Before TJOFLAT, Chief Judge, DUBINA, Circuit Judge, and PECK *, Senior Circuit Judge.

JOHN W. PECK, Senior Circuit Judge:

Defendant-appellant Robert Lazarchik pled guilty to two counts of distribution of a controlled substance in violation of 21 U.S.C. § 841(a)(1). The district court found that the applicable guidelines range was 63 to 78 months and sentenced defendant to 71 months. Defendant appeals, arguing that the district court erred in using the gross weight of the drugs sold to calculate the base offense level under the sentencing guidelines. For the reasons that follow, WE AFFIRM.

## I. BACKGROUND

Robert Lazarchik, a licensed pharmacist, was indicted on five counts of unlawfully distributing controlled substances after a government informant purchased scheduled drugs from him without a prescription. Lazarchik pled guilty to two counts involving Hydrocodone (Tussionex) and Diazepam (Valium). In exchange, the charges involving Hydromorphone (Dilaudid) and Oxycodone (Tylox and Percodan) were dismissed.

The probation department submitted a presentence report calculating the guidelines range. First, the base offense level was calculated by determining the heroin equivalency of the drugs involved.[1] The equivalency using gross weights follows:

| DRUG | NO. OF UNITS | GROSS WT PER UNIT | TOTAL GROSS WT | | TOTAL HEROIN EQ. | |
|---|---|---|---|---|---|---|
| Dilaudid | 76 | 0.094 g | 7.144 | g | 17.86 | g |
| Tylox | 200 | 0.600 g | 120.0 | g | 60.0 | g |
| Valium | 200 | 0.170 g | 34.0 | g | 4.25 | g |
| Percodan | 100 | 0.500 g | 50.0 | g | 25.0 | g |

Pursuant to Guideline § 1B1.3(a)(2), the base offense level is calculated by including all the drugs illegally sold, not just those included in

---

* Honorable John W. Peck, Senior U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

1. *See* U.S.S.G. § 2D1.1, comment (n. 10).

| DRUG | NO. OF UNITS | GROSS WT PER UNIT | TOTAL GROSS WT | TOTAL HEROIN EQ. |
|---|---|---|---|---|
| Tussionex | 1 pt | 556.7 g | 556.7 g | 1.1134 g [2] |
| | TOTAL | | | 108.2234 g |

The Drug Quantity Table in Guideline § 2D1.1 provides for a base offense level of 26 for this amount of heroin or its equivalent. Adjustments to this offense level netted zero, and accordingly, the probation department found the guideline range to be 63–78 months. The district court adopted the probation department's findings over the defendant's objection and sentenced the defendant to 71 months imprisonment.

## II. DISCUSSION

Lazarchik contends that the district court erred in using the gross weight of the drugs sold rather than the net weight, or dosage weight, of the controlled substances to compute the heroin equivalency. Using a net method, Lazarchik states that the heroin equivalency would be only 1.99025 grams, yielding a guideline range of 10–16 months, which could be served by a split sentence.

At the time the offenses at issue were committed, the Drug Quantity Table included the following heading and footnote:

*Controlled Substances and Quantity* *

. . . . .

* The scale amounts for all controlled substances refer to the total weight of the controlled substance. Consistent with the provisions of the Anti–Drug Abuse Act, if any mixture of a compound contains any detectable amount of a controlled substance, the entire amount of the mixture or compound shall be considered in measuring the quantity. . . .

The district court concluded that this footnote compelled the use of gross weights in calculating the heroin equivalency. However, the defendant contends that despite the requirement in the first sentence that "total weight" be used, the phrase "Consistent with the provisions of the Anti–Drug Abuse Act" creates an ambiguity requiring analysis of the Anti–Drug Abuse Act. Moreover, he argues that this Act, which amended 21 U.S.C. § 841, the statute under which he was convicted, demonstrates a Congressional intent to treat pharmaceutical drugs differently from "street drugs" such as heroin and cocaine.

Lazarchik begins his analysis with Application Note One to the guideline, which states that "mixture or substance" has the same meaning in the guideline that it has in 21 U.S.C. § 841. He then points out that the terms "mixture or substance" were added to this statute by the Anti–Drug Abuse Act of 1986 to change the method for determining the penalty for drug activity to use the total weight of the mixture containing the controlled substance rather than only the amount of the pure controlled substance that the mixture contained. However, these terms were added only to

the counts of conviction. *See* § 1B1.3(a)(2), comment (background) and § 3D1.2(d).

2. The probation department calculated the equivalency of the Hydrocodone cough syrup as 0.5 grams of heroin per gram of syrup, for a gross equivalency of 278.35 grams of heroin. The government concedes that this calculation was erroneous. The government asserts that the equivalency rate should be 0.002 grams of heroin per gram syrup, for a gross heroin equivalency of 1.1134 grams.

Defendant contends on appeal that the equivalency of the cough syrup should be calculated with reference to the density of the controlled substance within the liquid solution, for an equivalency of 0.48 grams. This is merely an indirect attempt to use a net weight method, and contradicts the clear dictate of the Drug Equivalency Table, which specified at the time of the offense that "1 gm of Hydrocodone Cough Syrups = 2 mg of heroin."

Correction of the error in the probation department's calculation does not alter the base offense level because the corrected gross heroin equivalency still falls within the range of 100 to 399 grams of heroin, for a base offense level of 26.

subsections 841(b)(1)(A) and (B), which provide penalties for the distribution of "street drugs"—heroin, cocaine, PCP, LSD, propanamide, marihuana, and methamphetamine. They were not added to subsections 841(b)(1)(C) or (D), which provide the penalties for pharmaceuticals distribution. Lazarchik concludes that this distinction manifests a Congressional intent to retain the net weight method for punishing pharmaceuticals distribution. He also contends that the Sentencing Commission incorporated this distinction into the Guidelines through the footnote's language "Consistent with the provisions of the Anti–Drug Abuse Act...."

We do not agree. We find that the first sentence to the Guidelines footnote unambiguously requires total weight to be used in calculating the equivalency of all controlled substances. Every circuit that has considered this guideline has reached the same conclusion. *United States v. Gurgiolo*, 894 F.2d 56, 61 (3d Cir.1990); *United States v. Meitinger*, 901 F.2d 27, 29 (4th Cir.1990); *United States v. Rojas*, 868 F.2d 1409, 1410 (5th Cir.1989); *United States v. Elrod*, 898 F.2d 60, 62 (6th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 104, 112 L.Ed.2d 74 (1990); *United States v. Stewart*, 878 F.2d 256, 259 (8th Cir.1989).

In light of the clear command that total weight be used, we do not find that the prefatory phrase "Consistent with the provisions of the Anti–Drug Abuse Act" creates an ambiguity requiring resort to statutory analysis. Nevertheless, assuming for the sake of argument that analysis of subsections 841(b)(1)(A)–(D) is appropriate, we find that Lazarchik's analysis is without merit. It is true that subsections 841(b)(1)(A) and (B), which provide penalties for distribution of "street drugs", include the language "mixture or substance containing a detectable amount of ..." while the provisions for pharmaceutical distribution do not. However, this does not imply a Congressional intent to measure pharmaceuticals and street drugs different-

ly. A more careful reading of the statute shows that with regard to "street drugs", Congress varied the statutory maximum and minimum penalties by weight, and therefore it was necessary that the statute specify whether the weight of the entire mixture was to be included or only the weight of the pure substance.[3] However, with regard to the illegal distribution of pharmaceuticals, Congress provided for a single statutory sentencing range for each Schedule, regardless of the amount of the substance distributed. Therefore, because no statutory penalty distinctions are made on the basis of weight for pharmaceuticals, there was no need to specify within the statute how pharmaceutical weights should be calculated.[4] Accordingly, we find no merit in appellant's argument that this statute compels the use of net weights in calculating the heroin equivalency of pharmaceuticals under the Guidelines. In so holding, we join two other circuits that have rejected this distinction between pharmaceuticals and other illegal drugs. *See United States v. Gurgiolo*, 894 F.2d 56, 61 (3d Cir.1990); *United States v. Bayerle*, 898 F.2d 28, 31–32 (4th Cir.1990).

## III. CONCLUSION

For the reasons stated above, we conclude that the district court properly calculated the appellant's sentence under the guidelines. Accordingly, the judgment of the district court is affirmed.

---

**3.** For example, violations involving 1 kilogram or more of a mixture or substance containing a detectable amount of heroin are subject to imprisonment of not less than 10 years or more than life, while violations involving 100 grams or more of a mixture or substance containing a detectable amount of heroin are subject to imprisonment of not less than 5 years nor more

**4.** The Guidelines, however, do provide for varying the sentencing range by the weight of the substance involved. It is entirely appropriate that the Sentencing Commission should choose to adopt the same method for computing the weight of pharmaceuticals that Congress chose for § 841(b)(1)(A)–(B) substances.