**UNITED STATES of America, Appellee,**

v.

**John Ed YOUNG, Sr., Appellant.**

**No. 92–2643.**

United States Court of Appeals, Eighth Circuit.

Submitted March 16, 1993.

Decided May 5, 1993.

Rehearing and Rehearing En Banc Denied June 10, 1993.

---

Leslie Borgognoni, Fayetteville, AR, for ·appellant.

Matthew Fleming, Asst. U.S. Atty., Fort Smith, AR, for appellee.

Before McMILLIAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

McMILLIAN, Circuit Judge.

John Ed Young, Sr., appeals from a final judgment entered in the District Court[1] for the Western District of Arkansas sentencing him to 188 months imprisonment following his guilty plea to possessing Dilaudid with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C).[2] For reversal, he argues the district court erred in sentencing him based on the entire weight of the Dilaudid tablets, on relevant conduct that was not supported by any evidence, and on a quantity of Dilaudid from a prior conviction. For the reasons discussed below, we affirm the judgment of the district court.

At his sentencing hearing, Young conceded that there were no factual inaccuracies in the revised Presentence Report (PSR), including its statement that he obtained a total of 14,632 Dilaudid tablets. He objected, however, to the PSR's recommended denial of the acceptance-of-responsibility reduction; inclusion of the entire weight of the Dilaudid tablets, rather than just the weight of the hydromorphone contained in the tablets; in-

---

1. The Honorable H. Franklin Waters, Chief Judge, United States District Court for the Western District of Arkansas.

2. Dilaudid is a pharmaceutically manufactured pain killer. The active ingredient in Dilaudid is hydromorphone, which is a schedule II controlled substance. *United States v. Shabazz*, 290 U.S.App.D.C. 23, 933 F.2d 1029, 1030, *cert. denied*, —— U.S. ——, 112 S.Ct. 431, 116 L.Ed.2d 451 (1991).

clusion of the Dilaudid that he obtained for himself to relieve the pain caused by his medically-diagnosed kidney problems; and inclusion of the Dilaudid involved in his prior conviction, which was also used to increase his criminal history score. Young's attorney had filed a written objection challenging the PSR's inclusion of the Dilaudid that Young obtained at times other than those specified in the indictment. Young testified that he realized the Dilaudid had "messed [him] up," that he had stopped using the Dilaudid, and that he would never use it again. The district court then granted him a two-level reduction for acceptance of responsibility. The district court overruled Young's other objections.

Young argues on appeal that the district court erred in including in its sentencing calculation the entire weight of the Dilaudid tablets because 21 U.S.C. § 841(b)(1)(C)—the applicable penalty provision of the statute under which he was charged—refers to "a controlled substance," rather than "a mixture or substance containing a detectable amount of [the controlled substance]." Young also argues that the district court erred in including tablets obtained on dates other than those specified in the indictment because the government failed to prove he obtained all the tablets as part of the same scheme or plan. Young further argues that the district court erred in including tablets that he obtained for personal use pursuant to valid prescriptions and tablets that were the subject of his prior conviction.

■ The district court properly included the entire weight of the Dilaudid tablets, rather than the weight of the hydromorphone only. The notation at the end of the drug quantity table states that, "[u]nless otherwise specified, the weight of a controlled substance set forth in the table refers to *the entire weight of any mixture or substance containing a detectable amount of the controlled substance.*" U.S.S.G. § 2D1.1(c) (emphasis added). Although the table does not list hydromorphone, the commentary provides that one gram of hydromorphone is equal to 2.5 kilograms of marijuana. U.S.S.G. § 2D1.1, comment. (n. 10) (drug equivalency table). The commentary also

suggests that the phrase "one gram of hydromorphone" actually means "one gram of a substance containing hydromorphone." *Id. See also United States v. Bayerle,* 898 F.2d 28, 31–32 (4th Cir.) (although "mixture or substance" notation refers to drug quantity table in Guidelines § 2D1.1(c), it also applies to drug equivalency table in that section's commentary), *cert. denied,* 498 U.S. 819, 111 S.Ct. 65, 112 L.Ed.2d 39 (1990).

Other circuits have held that the entire weight of the tablets should be included in determining the base offense level for a defendant convicted of drug offenses involving Dilaudid. *United States v. Blythe,* 944 F.2d 356, 362–63 (7th Cir.1991); *United States v. Shabazz,* 290 U.S.App.D.C. 23, 933 F.2d 1029, 1031–37, *cert. denied,* —— U.S. ——, 112 S.Ct. 431, 116 L.Ed.2d 451 (1991); *United States v. Lazarchik,* 924 F.2d 211, 213–14 (11th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 96, 116 L.Ed.2d 67 (1991); *United States v. Meitinger,* 901 F.2d 27, 29 (4th Cir.), *cert. denied,* 498 U.S. 985, 111 S.Ct. 519, 112 L.Ed.2d 531 (1990). Additionally, the Supreme Court has held that 21 U.S.C. § 841(b)(1)(B)(v) (imposing five-year mandatory minimum sentence for distributing one gram or more of a "mixture or substance containing a detectable amount" of LSD) requires the inclusion of the weight of the LSD's carrier medium (blotter paper) in determining the defendant's sentence. *Chapman v. United States,* —— U.S. ——, ——, 111 S.Ct. 1919, 1922, 114 L.Ed.2d 524 (1991).

Young argues that *Chapman v. United States* is distinguishable because it involved 21 U.S.C. § 841(b)(1)(B), which specifically includes the "mixture or substance" language. He argues that by excluding the "mixture or substance" language in 21 U.S.C. § 841(b)(1)(C), Congress intended that only the weight of the controlled substance (in the present case hydromorphone) would be included in determining the proper sentence. Other circuits have rejected this argument. In *United States v. Lazarchik,* the Eleventh Circuit stated:

It is true that subsections 841(b)(1)(A) and (B), which provide penalties for distribution of "street drugs," include the language "mixture or substance containing a detect-

able amount of ..." while the provisions for pharmaceutical distribution do not. However, this does not imply a Congressional intent to measure pharmaceuticals and street drugs differently.... [W]ith regard to "street drugs," Congress varied the statutory maximum and minimum penalties by weight, and therefore it was necessary [to] specify whether the weight of the entire mixture was to be included or only the weight of the pure substance. However, with regard to ... pharmaceuticals, Congress provided for a single statutory sentencing range for each Schedule, regardless of the amount of the substance distributed. Therefore, ... there was no need to specify within the statute how pharmaceutical weights should be calculated.

924 F.2d at 214 (footnotes omitted). In *United States v. Shabazz*, the D.C. Circuit stated:

[W]e think it clear that Congress authorized sentences of up to twenty years for offenses involving distribution of *any* amount of hydromorphone.... Congress said absolutely nothing about how the sentence imposed should be tailored to the weight of the hydromorphone involved.... That determination was left initially to the discretion of individual sentencing judges, and later to the expertise of the Sentencing Commission....

    ....

Appellants argue that subparagraphs (A) and (B), by their negative implication, evidence a congressional intent that the weight of the mixture or substance be irrelevant with respect to all but the eight controlled substances for which they make it relevant....

    ....

... We are aware of no "traditional tools of statutory construction," ... that would compel appellants' proposed reading.

933 F.2d at 1035–36 (citations omitted). We agree with the reasoning of these cases and conclude it was appropriate for the Sentencing Commission to adopt the same method for computing the weights of pharmaceuticals as Congress adopted for "street" drugs listed in 21 U.S.C. § 841(b)(1)(A) and (B). *See*

*United States v. Lazarchik,* 924 F.2d at 214 n. 4.

▪ The district court did not err in including most of the tablets that Young obtained on dates other than those specified in the indictment. At the sentencing hearing, Young's attorney indicated that there were no factual inaccuracies in the PSR, including its statement that Young obtained 14,632 Dilaudid tablets from January 3, 1990, until August 4, 1991. Although the government presented no evidence at the hearing, the undisputed statements in the PSR were that Young traveled over a tri-state area during this time and obtained the Dilaudid for himself and his family by misleading several different doctors. These undisputed facts indicate Young obtained all the tablets as part of the same course of conduct or common scheme or plan. *See* U.S.S.G. § 1B1.3(a)(2) (base offense level determined on basis of all acts "that were part of the same course of conduct or common scheme or plan as the offense of conviction").

▪ Young also argues the district court should not have included the tablets that were obtained for personal use pursuant to valid prescriptions. According to the PSR, however, Young did not obtain valid prescriptions. The doctors indicated they would not have given Young the prescriptions if they had known about all the Dilaudid he had obtained. Furthermore, the amount of tablets Young obtained, his admission that he gave Dilaudid to his wife, son, and daughter-in-law, the urologist's statement that Young failed to return to the hospital for confirmation of the diagnosis of kidney cancer, and Young's testimony that the Dilaudid had "messed" him up and he no longer used it, suggested that Young had not been using the Dilaudid for medicinal purposes. *See United States v. Galyen,* 798 F.2d 331, 332–33 (8th Cir.1986) (affirming defendant's conviction under 21 U.S.C. § 843(a)(3) for obtaining Dilaudid by misrepresentation or fraud, and for possessing Dilaudid with intent to distribute).

▪ We agree with Young that the district court erred in including tablets that were the basis of Young's prior Oklahoma conviction for distributing Dilaudid. *See United States v. Barton,* 949 F.2d 968, 970 (8th Cir.1991).

Young concedes, however, that this prior conviction involved only 1,092 Dilaudid tablets and that the remaining 13,540 tablets would still be equivalent to more than 3,000 kilograms of marijuana. Thus, the exclusion of the 1,092 tablets would not change Young's base offense level of 34. *See* U.S.S.G. § 2D1.1(c)(5).

Accordingly, we affirm the judgment of the district court.

BRIGHT, Senior Circuit Judge, dissenting.

I respectfully dissent because, in my opinion, Young's sentence should be calculated according to the weight of the controlled substance hydromorphone contained in the Dilaudid tablets, not the gross weight of the tablets themselves.

Young pled guilty to one violation of 21 U.S.C. § 841(a)(1) (unlawful distribution of this controlled substance). Accordingly, the district court sentenced Young under U.S.S.G. § 2D1.1, which requires the court to calculate the amount of the controlled substance involved in the crime. Section 2D1.1(c) of the Guidelines provides that, "[u]nless otherwise specified, the weight of a controlled substance set forth in the table refers to the entire weight of any *mixture or substance* containing a detectable amount of the controlled substance." Commentary Note One to U.S.S.G. § 2D1.1 provides that " '[m]ixture or substance' as used in this guideline has the same meaning as in 21 U.S.C. § 841."

Although § 841 does not define "mixture or substance," the words are used in the penalty section of the statute, § 841(b)(1), which contains four subsections. The first two subsections, §§ 841(b)(1)(A) and (B), use the "mixture or substance" language, while the penalties in subsection (C) refer only to "controlled substance[s]," and make no mention whatsoever of the "mixture or substance" language used in subsections (A) and (B). Subsection (D) deals with marijuana, hashish or other controlled substances not relevant here.

Young's violation here falls under subsection (C), which, as set forth above, expressly excludes the "mixture or substance" language used in subsections (A) and (B). As a result, I believe Congress intended that the amount of subsection (C) drugs involved in any given case be measured by the pure amount and content of the proscribed controlled drug, not the gross weight of the substance containing the drug. The Guidelines, by way of Commentary Note One to U.S.S.G. § 2D1.1, must be given a similar construction.

This interpretation finds support in the Supreme Court's relatively recent ruling in *Chapman v. United States*, —— U.S. ——, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991). There the Court ruled that, for purposes of calculating a sentence under 21 U.S.C. § 841(b)(1)(B)(v) (dealing with LSD), the meaning of the "mixture or substance" language contained in § 841(b)(1)(B)(v) extends to include the blotter paper on which LSD is commonly placed for sale. —— U.S. at ——, 111 S.Ct. at 1925. The Court stated, "Congress knew how to indicate that the weight of the pure drug was to be used to determine the sentence, and did not make that distinction with respect to LSD." *Id.*, —— U.S. at ——, 111 S.Ct. at 1924. As an example, the Court pointed to PCP and methamphetamine, where Congress chose to substitute the "mixture or substance" language with "the weight of a mixture or substance containing a detectable amount of the drug, or on lower weights of pure PCP or methamphetamine." *Id.* (emphasis omitted).

Just as the Court in *Chapman* construes Congress's manipulation of the "mixture or substance" language to mean that Congress specifically intended that LSD be measured by its gross or "street weight," I maintain the absence of such language in 21 U.S.C. § 841(b)(1)(C) reflects Congress's intent not to apply the "street weight" test in cases involving controlled drugs.

Rather, the more logical and reasoned rule to apply in § 841(b)(1)(C) pharmaceutical drug cases is a "pure weight" test. Unlike in "street weight" cases in which the weight, dose and purity of the proscribed drug is in the defendant's control, in pharmaceutical drug cases, the pharmaceutical manufacturer controls the weight and quantity of the drug, all within the strictures of the Federal Food,

Drug and Cosmetic Act, the FDA and the Drug Enforcement Agency.

In my view, a defendant should be held responsible for the weight of inert materials in substances containing a proscribed controlled drug only to the extent he or she in some way has control over its content. Here, Young clearly had no control over the weight or proportion of inert material contained in the Dilaudid tablets, and, thus, his sentence should be calculated according to the pure weight of the controlled substance hydromorphone.