UNITED STATES of America,
Plaintiff–Appellee,

v.

Shirley F. CROWELL, Defendant–
Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Alan JULIAN, Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Lora G. HORNER, Defendant–Appellant.

Nos. 92–10493, 92–10495 and 92–10611.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 4, 1993.*

Decided Nov. 29, 1993.

John E. Stevens, Paul V. Rood, Asst. U.S. Attys., Phoenix, AZ, for plaintiff-appellee.

Joseph E. Abodeely, Phoenix, AZ, for defendant-appellant Crowell.

Sandra Lynn Slaton, Phoenix, AZ, for defendant-appellant Julian.

Robert A. Wertsching, Phoenix, AZ, for defendant-appellant Horner.

Before: TANG, TROTT and FERNANDEZ, Circuit Judges.

## OPINION

FERNANDEZ, Circuit Judge:

Shirley F. Crowell, Alan Julian and Lora G. Horner appeal from the sentences imposed upon them after their convictions of conspiracy and possession with intent to distribute dilaudid, a prescription drug which contains hydromorphone, a Schedule II controlled substance. 21 U.S.C. §§ 841(a), 846. The single question we address in this opinion is whether the district court shall use the gross weight of the dilaudid tablet, or only the net weight of the controlled substance hydromorphone, in calculating drug quantity for purposes of sentencing.[1] We conclude that the district court properly based its calculation on the gross weight of the dilaudid tablets and affirm on this issue.

## BACKGROUND FACTS

In 1988, the Drug Enforcement Agency began investigating several persons who were illegally trafficking in dilaudid. Dilau-

---

\* The panel finds that *United States v. Crowell*, No. 92–10493, and *United States v. Horner*, No. 92–10611, are appropriate for submission without oral argument pursuant to 9th Cir.R. 34–4 and Fed.R.App.P. 34(a).

1. Appellants have also raised several other challenges to their convictions and sentences. We have addressed those claims in an unpublished memorandum disposition filed this date.

did is a pharmaceutically manufactured pain killer which produces effects similar to heroin's. DEA agents surveilled Horner and other members of the conspiracy as they visited doctors in California, Arizona and New Mexico and obtained multiple prescriptions for dilaudid under false pretenses. The tablets were transported to Julian and Crowell in Tennessee and to other conspirators in Missouri for resale.

Horner, Julian and Crowell were convicted by a jury of conspiracy and of several counts of possession with intent to distribute dilaudid in violation of 21 U.S.C. §§ 841(a), 846. The district court found that Horner entered the conspiracy on June 1, 1990, and that she was accountable, pursuant to United States Sentencing Commission, *Guidelines Manual,* § 1B1.3 (Nov. 1990),[2] for 11,790 dilaudid tablets distributed by the conspiracy between June and November 1990. Based on a gross weight of 90 milligrams per tablet, the district court calculated the drug quantity to be 1,061 grams of dilaudid, which was equivalent to 2,652 kilograms of marijuana. That drug quantity placed the offense level at 32. U.S.S.G. § 2D1.1(c)(6). Horner had a criminal history category of I, which resulted in a Guideline range of 121 to 151 months.

Horner objected to the calculation. She argued that only the weight of the controlled substance should be considered. Each dilaudid tablet contained 4 milligrams of hydromorphone. Using only the amount of hydromorphone, Horner calculated the total drug quantity to be 47 grams of hydromorphone, the equivalent of 117 kilograms of marijuana, which resulted in an offense level of 26 and Guideline range of 63 to 78 months. The district court rejected this argument and sentenced Horner at the lowest point on the higher Guideline range, 121 months.

Julian and Crowell were held accountable for 19,198 dilaudid tablets distributed by the conspiracy between January and November 1990. Using the gross weight of the tablets, the district court calculated the drug quantity to be 1,729 grams of dilaudid, which was equivalent to 4,324 kilograms of marijuana. That placed the drug quantity at level 34. Julian and Crowell each had a criminal histo-

ry category of I, which resulted in a sentencing range of 151 to 188 months. The district court sentenced Julian to 155 months, and sentenced Crowell to 151 months. Neither Julian nor Crowell objected to the drug quantity calculation in the district court.

## JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. Our jurisdiction to review the sentence is based on 18 U.S.C. § 3742(a). "A district court's interpretation and application of the sentencing guidelines are reviewed de novo." *United States v. Conkins,* 987 F.2d 564, 571 (9th Cir.1993).

## DISCUSSION

We must first address whether appellants are entitled to press their claims on appeal. Horner filed a written objection to the Presentence Report in which she challenged the probation officer's calculation of drug quantity based on the gross weight of the dilaudid tablets, rather than on the net weight of the hydromorphone. Although Horner did not argue this legal question at the sentencing hearing, the district court did consider and overrule Horner's objections to the Presentence Report. Julian and Crowell, however, did not make any objection to the calculation of drug quantity, either through objection to the Presentence Reports or at the sentencing hearing.

Ordinarily, this court "will not consider an issue raised for the first time on appeal." *United States v. Mondello,* 927 F.2d 1463, 1468 (9th Cir.1991) (refusing to consider claim that district court did not determine whether defendant was financially able to pay fine). Julian and Crowell did waive their claim on appeal by failing to bring the alleged error to the district court's attention. However, because we are vacating their sentences on other grounds and because we must decide the issue as to Horner, we have considered their claim also.

Section 841(b)(1) of Title 21 governs sentences for the distribution of controlled sub-

---

2. All references to the Sentencing Guidelines are    to the version effective November 1, 1990.

stances. Subsections (A), (B) and (D), which apply to certain enumerated controlled substances, specifically link the quantity of the controlled substance to the term of imprisonment. Dilaudid falls within § 841(b)(1)(C), which authorizes a term of imprisonment of not more than 20 years. Subsection (C) does not address how, or whether, the sentence is related to the weight of the controlled substance. As the District of Columbia Circuit Court of Appeals noted, § 841(b)(1)(C) permits a sentence of 20 years for "distribution of *any* amount of hydromorphone, even a single dosage." *United States v. Shabazz,* 933 F.2d 1029, 1035 (D.C.Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 431, 116 L.Ed.2d 451 (1991).

That statutory gap is addressed by the Sentencing Guidelines. The general Guideline principle is that drug quantity includes the entire weight of any mixture containing a detectable amount of controlled substance. U.S.S.G. § 2D1.1 n. * & comment. (nn. 10 & 11). Dilaudid is a mixture of inert ingredients and hydromorphone, a controlled substance. *Shabazz,* 933 F.2d at 1031–32. Because the Guidelines are reasonable and do not contravene congressional intent, we join the other Circuit Courts of Appeal which have held that the weight of the dilaudid tablet, rather than the weight of the hydromorphone, is the proper measure of drug quantity. *See United States v. Young,* 992 F.2d 207, 209–10 (8th Cir.1993); *United States v. Blythe,* 944 F.2d 356, 362–63 (7th Cir.1991); *Shabazz,* 933 F.2d at 1031–37; *United States v. Meitinger,* 901 F.2d 27, 29 (4th Cir.), *cert. denied,* 498 U.S. 985, 111 S.Ct. 519, 112 L.Ed.2d 531 (1990); *cf. United States v. Lazarchik,* 924 F.2d 211, 213–14 (11th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 96, 116 L.Ed.2d 67 (1991). Because there is no reason to extend the reports by reiterating the discussions found in those cases, we commend them to interested readers and add but a few additional comments.

Appellants contend that use of the gross weight of the tablet contravenes the market-oriented approach of *Chapman v. United States,* 500 U.S. 453, 111 S.Ct. 1919, 1925, 114 L.Ed.2d 524 (1991). They argue that, unlike street drugs, which can be diluted to create

more doses and more sales, these illegal pharmaceuticals are sold by the tablet prepared by the manufacturer and the dealer does not cut the drug to create more doses of lesser strength. However, we see no basis in the statute or in the Guidelines for treating pharmaceutical drugs differently from so-called "street drugs." *See Shabazz,* 933 F.2d at 1034–36. The distinction pressed by Horner "makes a difference ... only if the gross-weight rule was intended to protect consumers of illegal drugs from being defrauded by unscrupulous dealers who would sell them a product more diluted than they have bargained for. Obviously, this is not a purpose of the rule." *Id.* at 1037.

We find that use of the gross weight of the tablet is entirely consistent with *Chapman.* The market-oriented approach does not turn on the ability to dilute the drug. The essence of that approach is that the retail dealer is punished based on the number of doses he distributes. *See* 500 U.S. at —, 111 S.Ct. at 1925. *Chapman* held that the weight of the carrier medium should be included in the drug quantity. The Court noted that LSD was not sold by weight, but by dose, and the carrier medium was not used to dilute the drug, but to facilitate distribution. 500 U.S. at —, 111 S.Ct. at 1928. The same is true of dilaudid. Appellants trafficked in tablets, or doses, which may contain 1, 2, 3 or 4 milligrams of hydromorphone. The inert ingredients in the tablets serve to facilitate distribution. The drug can also be distributed "as a solution, butter, syrup, or powder." *Shabazz,* 933 F.2d at 1036. The fact that appellants' medium of choice was pills makes no legal difference.

Appellants also insist that we should be guided by *United States v. Robins,* 967 F.2d 1387 (9th Cir.1992), and *United States v. Acosta,* 963 F.2d 551 (2d Cir.1992), but those cases are not even remotely similar to this one. They represent a genre in which the non-narcotic substance is not mixed with the drug to enable distribution. In *Acosta,* the other substance (creme liqueur) had to be removed before the drug could be distributed, 963 F.2d at 553–54, and in *Robins* the other substance (cornmeal) was mere fraudulent packaging which was not mixed with the

drug, 967 F.2d at 1388–89. They offer appellants no succor.

Finally, appellants argue that 21 U.S.C. § 841(b)(1)(C) and U.S.S.G. § 2D1.1 are ambiguous and the rule of lenity requires that they be interpreted to apply only to the weight of the hydromorphone. This argument has been rejected as well. *Chapman,* 500 U.S. at ——, 111 S.Ct. at 1926–27. As the Court explained,

> The rule of lenity, however, is not applicable unless there is a grievous ambiguity or uncertainty in the language and structure of the Act, such that even after a court has seized every thing from which aid can be derived it is still left with an ambiguous statute. The rule of lenity comes into operation at the end of the process of construing what Congress has expressed, not at the beginning as an overriding consideration of being lenient to wrongdoers.

500 U.S. at ——, 111 S.Ct. at 1926 (internal quotations and citations omitted). The statute permits a sentence of up to 20 years for distribution of any amount of hydromorphone. 21 U.S.C. § 841(b)(1)(C). The Guideline delimits the sentence according to the amount of any mixture containing a detectable amount of hydromorphone. U.S.S.G. § 2D1.1 n. *. There is no ambiguity upon which the rule of lenity can operate.

## CONCLUSION

The Guidelines provide that for sentencing purposes the entire weight of a mixture containing a controlled substance will be treated as the weight of the controlled substance itself. Pills are just that—a controlled substance mixed with other ingredients. There is no reason to treat them differently from other methods of delivering drugs to their ultimate consumers. Thus, the district court properly calculated the drug quantity based on the entire weight of the dilaudid tablets.

AFFIRMED on the issue decided in this opinion. However, the sentences of Julian and Crowell are VACATED for the reasons set forth in our unpublished memorandum disposition which is filed on this date.