**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Louis LACOUR, Defendant–Appellant.**

**No. 93–3877.**

United States Court of Appeals,
Seventh Circuit.

Argued Aug. 3, 1994.

Decided Aug. 17, 1994.

Matthew R. Bettenhausen, Asst. U.S. Atty. (argued), Terry M. Kinney, Asst. U.S. Atty., Barry R. Elden, Asst. U.S. Atty., Chicago, IL, for U.S.

Kevin E. Milner, Chicago, IL (argued), for Louis Lacour.

Before POSNER, Chief Judge, and BAUER and KANNE, Circuit Judges.

PER CURIAM.

Louis Lacour pleaded guilty to conspiring to possess with the intent to distribute, and to obtain by misrepresentation, subterfuge, fraud and deception, in excess of 60,000 tablets of dilaudid in violation of 21 U.S.C. §§ 841(a)(1) and 843(a)(3). Lacour challenges the weight of drugs used to calculate his sentence. We affirm.

## FACTS

Lacour was involved with a group of individuals that acquired and distributed dilaudid[1] illegally for a large profit.[2] After the group's activities were discovered, Lacour agreed to plead guilty to one count of conspiracy to possess with intent to distribute dilaudid and agreed to cooperate with the government. Lacour's co-defendants were tried and convicted of thirty-seven counts of a thirty-eight count indictment.

At Lacour's sentencing, the parties agreed that each tablet of dilaudid weighed .090 grams and contained .004 grams of hydromorphone, a Schedule II Controlled Substance. The parties stipulated that Lacour

---

1. Dilaudid, a synthetic heroin, is a powerful painkiller containing hydromorphone, classified as a Schedule II Controlled Substance. *See* 21 U.S.C. § 812; Physicians' Desk Reference, 1126 (1994 ed.) ("Dilaudid is a narcotic analgesic; its principal therapeutic effect is relief of pain.").

2. The record reveals that Lacour and his associates would arrange for individuals to visit physicians for the purpose of obtaining prescriptions of dilaudid. The group would then purchase the pills from the patients and resell them at a substantial profit. *See* Rec. at 413.

had accepted responsibility for 60,000 tablets. A dispute arose as to whether the gross weight of the dilaudid tablet (.090 g) or the net weight of the controlled substance hydromorphone (.004 g) should be used to calculate Lacour's sentence. The district court concluded that dilaudid was a mixture or substance containing hydromorphone and calculated the sentence based upon the total weight of the tablets. Lacour was sentenced to 120 months of imprisonment and three years of supervised release.

## DISCUSSION

Lacour claims the district court erred in calculating the drug quantity to determine his offense level. He argues that only the net weight of the controlled substance should be used to calculate his sentence. To determine whether the district court erred in using the gross weight of the dilaudid tablets to calculate Lacour's sentence, this court is faced with a legal question it must review de novo. *United States v. Tucker*, 20 F.3d 242, 243 (7th Cir.1994); *see United States v. Prevatte*, 16 F.3d 767, 779 (7th Cir.1994) ("The application of the law to the facts is a legal question that we review de novo.").

■ 21 U.S.C. § 841(b) provides the penalties to be imposed for distribution of controlled substances in violation of 21 U.S.C. § 841(a). Lacour's offense falls under § 841(b)(1)(C), which provides for a maximum term of imprisonment of twenty years.[3] However, subsection (C) does not address the relationship between quantity and sentence. Thus, distribution of *any* amount of hydromorphone is subject to the statutory maximum term of twenty years of imprisonment. *See United States v. Crowell*, 9 F.3d 1452, 1454 (9th Cir.1993); *United States v. Shabazz*, 933 F.2d 1029, 1035 (D.C.Cir.), *cert.*

*denied sub nom., McNeil v. United States,* — U.S. ——, 112 S.Ct. 431, 116 L.Ed.2d 451 (1991).

■ In contrast to subsection (C), subsections (A) and (B) both explicitly refer to a "mixture or substance containing detectable amounts of heroin."[4] Lacour relies upon this distinction to argue that Congress did not intend the calculations of the weight of a controlled substance for offenses that fall under subsection (C) to include a "mixture or substance," but rather the weight of the controlled substance alone.

This precise question of statutory interpretation is one of first impression in this circuit. This court, however, has looked at the general issue of whether to use gross or net weight in sentencing in a case reviewed for plain error. In *United States v. Blythe*, 944 F.2d 356, 363 (7th Cir.1991), the defendant objected to the use of the gross weight of the dilaudid tablets in calculating his sentence. The court held that the defendant was properly sentenced using the total weight of the tablets. *Id.* (citing *Shabazz*, 933 F.2d at 1031, 1037 (dilaudid is a "mixture or substance" containing hydromorphone)). The court did not address the difference in statutory language in § 841(b)(1)(C).

Lacour distinguishes *Blythe* because the court reviewed the case for plain error due to defendant's waiver of the issue. While the standard of review is not the same, this case provides some guidance. First, the court in *Blythe* determined that the gross weight of dilaudid tablets should be used in drug calculations, and only after this determination was made did the court conclude under the plain error standard that the defendant's due process rights were not violated. Second, the court cited with approval cases not decided under the plain error standard making the

---

3. "In the case of a controlled substance in schedule I or II except as provided in subparagraphs (A), (B), and (D), such person shall be sentenced to a term of imprisonment of not more than 20 years...." 21 U.S.C. § 841(b)(1)(C).

4. (b) Except as otherwise provided ... any person who violates subsection (a) of this section shall be sentenced as follows:
    (1)(A) In the case of a violation of subsection (a) of this section involving—

    (i) 1 kilogram or more of a mixture or substance containing a detectable amount of heroin; ...
    (B) In the case of a violation of subsection (a) of this section involving—
    (i) 100 grams or more of a mixture or substance containing a detectable amount of heroin;
21 U.S.C. § 841(b)(1)(A) and (B).

very same determination as to the weight of dilaudid. *Id.* at 362–63 (citing *Shabazz,* 933 F.2d at 1032; *United States v. Meitinger,* 901 F.2d 27, 29 (4th Cir.), *cert. denied,* 498 U.S. 985, 111 S.Ct. 519, 112 L.Ed.2d 531 (1990); *United States v. Bayerle,* 898 F.2d 28, 32 (4th Cir.), *cert. denied,* 498 U.S. 819, 111 S.Ct. 65, 112 L.Ed.2d 39 (1990)).

Additionally, other circuits faced with this issue have concluded that a defendant's sentence is correctly calculated based upon the weight of the whole dilaudid tablet. *See, e.g.,* *Crowell,* 9 F.3d at 1454; *United States v. Young,* 992 F.2d 207 (8th Cir.1993); *Shabazz,* 933 F.2d at 1035; *United States v. Lazarchik,* 924 F.2d 211 (11th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 96, 116 L.Ed.2d 67 (1991); *Bayerle,* 898 F.2d at 32. The reasoning of the other circuits is persuasive.

In *Young,* 992 F.2d at 209, the Eighth Circuit held that the defendant's sentence should be calculated by the entire weight of the tablets. The defendant in that case also argued that the exclusion of "mixture or substance" language in § 841(b)(1)(C) indicates that Congress only intended the weight of the hydromorphone to be included in the calculation. The Eighth Circuit, following other circuits, held that the Sentencing Commission adopted the same method for computing the weight of pharmaceuticals as Congress adopted for street drugs penalized under § 841(b)(1)(A) and (B), and therefore the gross weight of the pills should be included in sentencing calculations. *Id.* at 209–10; *see* *Lazarchik,* 924 F.2d at 213–14 (the statutory distinction "does not imply a Congressional intent to measure pharmaceuticals and street drugs differently" and "because no statutory penalty distinctions are made on the basis of weight for pharmaceuticals, there was no need to specify within the statute how pharmaceutical weights should not be calculated"); *Shabazz,* 933 F.2d at 1031–37 ("Congress said absolutely nothing about how the sentence imposed should be tailored to the weight of the hydromorphone involved"; "[w]e can imagine no relevant difference between pharmaceutically manufactured drugs like dilaudid and the ... controlled substances ... singled out for gross-weight

treatment"); *but see Young,* 992 F.2d at 211 (Bright, J. dissenting) (concluding that the distinction between § 841(b)(1)(A), (B) and (C) and *Chapman* mandate a sentence based upon the weight of the hydromorphone alone).

The Ninth Circuit in *Crowell,* 9 F.3d at 1454, held that the Sentencing Guidelines themselves sufficiently answer the question of whether the gross or net weight of hydromorphone should be used. "Unless otherwise specified, the weight of a controlled substance set forth in the [Drug Quantity] table refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance...." *Id.* (citing U.S.S.G. § 2D1.1 n.*). That court also looked to Application Note 1 that states "mixture or substance" as used in the guidelines has the same meaning as in 21 U.S.C. § 841. Finally, the court concluded that the Guidelines "are reasonable and do not contravene congressional intent," *Crowell,* 9 F.3d at 1454, and "provide that for sentencing purposes the entire weight of a mixture containing a controlled substance will be treated as the weight of the controlled substance itself." *Id.* at 1455.

We join the circuits that have unanimously decided this issue. A court is not required to interpret the absence of the "mixture or substance" language as precluding the use of the weight of a mixture in calculating a sentence. Instead, the Guidelines and the statute together indicate that the district court correctly calculated Lacour's sentence based upon the gross weight of the dilaudid tablets. The absence of the "mixture or substance" language is explained by the fact that distribution of any amount of a controlled substance classified as Schedule II controlled substance is punishable by a maximum of twenty years.

■ Lacour also claims that *Chapman v. United States,* 500 U.S. 453, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991), supports his argument that only the net weight of the dilaudid tablets should be considered in calculating his sentence. *Chapman* answers the question of whether the weight of the blotter paper containing LSD, or the weight of the pure LSD, determines eligibility for the minimum sentence under 21 U.S.C.

§ 841(b)(1)(B). 500 U.S. at 455, 111 S.Ct. at 1922. The Court held that the carrier medium used to facilitate distribution should be included in the drug quantity. *Id.* Because *Chapman* deals with a statutory provision that explicitly includes the "mixture or substance" language, Lacour's argument lacks force. Further, the *Crowell* court also addressed this very argument, and found that the inert ingredients in the dilaudid tablets facilitated its distribution and therefore *Chapman* supported the court's holding that the gross weight should be used in sentencing calculations. *Crowell,* 9 F.3d at 1455. *Chapman* does not further Lacour's argument.[5] *But see Young,* 992 F.2d at 211 (Bright, J. dissenting).

## CONCLUSION

Based on this court's decision in *Blythe* and the applicable statutory and Guideline provisions we hold that the entire weight of the dilaudid tablets should be considered in calculating a sentence and therefore AFFIRM the district court's judgment.

---

5. Lacour also argues that the court should apply the rule of lenity because Congress' intent is not clear as to sentencing under § 841(b)(1)(C). Because a reading of the Guidelines and statutory sections removes any potential ambiguity, we decline to invoke the rule of lenity here. *See Chapman,* 500 U.S. at 463, 111 S.Ct. at 1926 ("The rule of lenity, however, is not applicable unless there is a grievous ambiguity or uncertainty in the language and structure of [a congressional act] . . ."); *see also United States v. Nelson,* 29 F.3d 261, 264 (7th Cir.1994); *Crowell,* 9 F.3d at 1455 ("There is no ambiguity upon which the rule of lenity can operate").