**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 98-4862

STEVE C. OVERMAN,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, Chief District Judge.
(CR-96-154-MU)

Submitted: May 28, 1999

Decided: July 6, 1999

Before WILKINS and TRAXLER, Circuit Judges,
and HALL, Senior Circuit Judge.

_____

Affirmed in part, vacated in part, and remanded by unpublished per
curiam opinion.

_____

**COUNSEL**

Michael S. Scofield, LAW OFFICES OF SCOFIELD & ROGERS,
Charlotte, North Carolina, for Appellant. Mark T. Calloway, United
States Attorney, Brian Lee Whisler, Assistant United States Attorney,
Charlotte, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Steve C. Overman was convicted by a jury of conspiracy to possess with intent to distribute and distribute Dilaudid, see 21 U.S.C. § 846 (1994), and was sentenced to a term of seventy-eight months imprisonment. Overman appeals his sentence, alleging that the district court mistakenly believed it lacked authority to depart downward because of his age (sixty-nine) and his poor health. See U.S. Sentencing Guidelines Manual § 5H1.1, p.s., § 5H1.4, p.s. (1998). He also contends that the testimony of certain government witnesses should have been excluded under the federal bribery statute, see 18 U.S.C. § 201(c)(2) (1994), and that the sentencing scheme set forth in the sentencing guidelines for offenses involving Dilaudid violates due process and equal protection. We affirm Overman's conviction and find that his constitutional challenge to the sentence is without merit. We find that the district court erred in concluding that Fourth Circuit precedent precluded a departure. Therefore, we vacate the sentence and remand for further proceedings.

During an investigation into Dilaudid distribution in Gaston County, North Carolina, state and federal drug agents monitored two transactions involving Steve Overman. On January 5, 1995, Overman bought 500 Dilaudid pills from Bobby Black, a long-time Dilaudid dealer who had begun cooperating with authorities. On August 1, 1996, Lisa Campbell bought ten Dilaudid pills from Overman while under surveillance. At the time, she was working as a confidential informant for an agent with a federal drug task force.

Overman was indicted for conspiracy and went to trial in July 1998 with three co-defendants. Co-defendants Bobby Campbell, Bobby Black, and James Somerset entered guilty pleas and testified against Overman at trial. James Thompson and Lisa Campbell, both unindicted conspirators, also testified against Overman. The district court

2

denied Overman's motion to suppress the testimony of all witnesses who were testifying pursuant to guilty pleas in reliance on United States v. Singleton, 144 F.3d 1343 (10th Cir. 1998), rev'd en banc, 165 F.3d 1297 (10th Cir. 1999), petition for cert. filed, Mar. 31, 1999 (No. 98-8758), and denied his motion in limine to exclude Lisa Campbell's testimony on the ground that his sale to Campbell was unrelated to the charged conspiracy.

At sentencing, the district court found that the Dilaudid sentencing scheme had an articulable rational basis and denied Overman's motion for a finding that the conversion table was unconstitutional. With regard to the requested departure, the district court found that both age and health were factors which had been considered by the Sentencing Commission, but which were possible grounds for departure. The court further found that Overman suffered from diabetes, heart disease, a tumor (benign) behind his eye, prostate problems, and poorly controlled high blood pressure. The court found that Overman had an extraordinary physical impairment and, in the court's view, qualified for a downward departure. However, the court decided not to depart, stating that a departure would not likely be affirmed and there was thus no legal basis for a departure. The court imposed a sentence of seventy-eight months imprisonment, the low end of the guideline range.

We first consider the district court's decision not to depart below the guideline range on the basis of Overman's physical condition.[1] This court lacks authority to review the decision of a district court not to depart from the guideline range when that decision rests upon a determination that a departure is not warranted. See United States v. Brock, 108 F.3d 31, 33 (4th Cir. 1997). However, this court may review the decision of a district court not to depart when that determination is grounded upon a belief that the court lacks the legal authority to depart. See id.

_____

[1] The defense sought a departure on the basis of age as well as physical condition. However, because the age policy statement, § 5H1.1, is essentially subsumed by the physical condition policy statement, § 5H1.4, we will discuss only the latter.

3

Under the test set out in <u>Koon v. United States</u>, 518 U.S. 81, 94-96 (1996), if a factor is a discouraged basis for departure, a departure is still permissible "if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." <u>Id.</u> at 34-35. Guideline section 5H1.4 states in pertinent part:

> Physical condition . . . is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range. However, an extraordinary physical impairment may be a reason to impose a sentence below the applicable guideline range; <u>e.g.</u>, in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment.

In this case, the district court made the following finding:

> The Court finds from the evidence that Mr. Overman suffers from the following: diabetes [mellitus], for which he is under medication; severe coronary artery disease; a tumor behind his eye which continues to bleed; he's had a prostatectomy, he's suffered from prostate, the sequelae of which is unknown at this time; he has severe ischemic cardiomyopathy, which explains why he is short of breath; he has poorly controlled hypertension.

> The Court finds in this case that home de[tent]ion would be just as effective and more cost effective. Nevertheless, despite the fact that the Court believes that Mr. Overman qualifies for a finding and the Court finds that he does have an extraordinary physical impairment, nevertheless, as the Court understands the ext[a]nt Fourth Circuit jurisprudence, the Court does not believe that this finding would be affirmed and would be upheld on appeal.

> So despite the factual findings, the Court finds that those factual findings do not give the Court a legal basis upon which to exercise discretion to depart downward.

4

The district court's words leave no doubt that its decision not to depart rested on the legal conclusion that Fourth Circuit law would not allow a departure under the circumstances, not on a decision by the court that a departure was not warranted. Accordingly, the decision not to depart is subject to this court's review. See Brock, 108 F.3d at 33.

The district court's decision that its findings did"not give it a legal basis upon which to exercise discretion to depart downward" was clearly erroneous. Section 5H1.4 makes clear that a departure is allowed for extraordinary physical condition, particularly when "home detention may be as efficient as, and less costly than, imprisonment." Here, the government does not challenge any of the district court's factual findings. Because the district court incorrectly found that it lacked the authority to depart, we vacate the sentence on this ground and remand so that the district court may decide whether or not to exercise its discretion to depart downward. See Brock, 108 F.3d at 35.

Overman next contends that Lisa Campbell's testimony should have been excluded under Singleton because she received $350 for her cooperation. He recognizes that Singleton has now been reversed, but contends that the payment to her violated the federal bribery statute, 18 U.S.C. § 201(c)(2), which prohibits giving "anything of value" to a witness in return for his or her testimony. Overman asserts that the payment for Campbell's cooperation necessarily contemplated her later testimony about the incident. Because Overman did not make this specific argument with regard to Lisa Campbell's testimony in the district court, the argument is reviewed for plain error. See United States v. Olano, 507 U.S. 725, 732 (1993) (error must have occurred which was plain and affected defendant's substantial rights, and which requires correction to protect fairness, integrity, or public reputation of judicial proceedings). This circuit has not adopted the reasoning of the original Singleton panel decision and will not do so in this case. Consequently, we find that the district court did not commit plain error in failing to exclude Lisa Campbell's testimony. For the same reason, we find that the district court did not err in denying Overman's motion to exclude the testimony of the government witnesses who testified pursuant to plea agreements.

5

Finally, Overman contends that there is no rational basis for the distinction made in the Drug Equivalency Tables set out in USSG § 2D1.1 between Dilaudid and heroin. The Tables convert one gram of Dilaudid to 2.5 kilograms of marijuana, but convert one gram of heroin to one kilogram of marijuana. <u>See</u> USSG § 2D1.1, comment. (n.10). Overman was held responsible for 250 Dilaudid pills, making his base offense level 28. A one-to-one conversion to marijuana equivalent would have lowered his base offense level to 26.

Dilaudid is a synthetic painkiller "which produces effects similar to heroin's." <u>United States v. Crowell</u>, 9 F.3d 1452, 1453 (9th Cir. 1993). Application Note 20 provides the following general explanation for the differing base offense levels in § 2D1.1:

> The base offense levels in § 2D1.1 are either provided directly by the Anti-Drug Abuse Act of 1986 or are proportional to the levels established by statute, and apply to all unlawful trafficking. Levels 32 and 26 are the distinctions provided by the Anti-Drug Abuse Act; however, further refinement of drug amounts is essential to provide a logical sentencing structure for drug offenses. To determine these finer distinctions, the Commission consulted numerous practitioners, including authorities at the Drug Enforcement Administration, chemists, attorneys, probation officers, and members of the Organized Crime Drug Enforcement Task Forces, who also advocate the necessity of these distinctions.

USSG § 2D1.1, comment. (n.20).

In his motion for a declaration of unconstitutionality and at sentencing, Overman apparently presumed that heroin and Dilaudid were exact chemical equivalents and this presumption was never challenged. However, Overman offered no evidence to support the presumption. The district court found that, because Dilaudid is manufactured legally and must be stolen from the manufacturers, the added level of criminality justified a more severe sentence for Dilaudid offenses. We need not decide whether this view is correct, as Overman has not shown that he has any basis for challenging the

6

Sentencing Commission's decision to treat heroin and Dilaudid differently.

We therefore affirm Overman's conviction and reject his constitutional challenge to his sentence. However, we vacate the sentence and remand the case so that the district court may decide whether or not to exercise its discretion to depart downward. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED IN PART, VACATED IN PART,</u>
<u>AND REMANDED</u>

7